ERIC C. LUND, D.C. Bar No. 450982
BRENDAN BALLARD, D.C. Bar No. 978631
U.S. Dept. of Labor, Office of the Solicitor
Plan Benefits Security Division
P.O. Box 1914
Washington, D.C. 20013
Telephone: (202) 693-5600, Facsimile: (202) 693-5610
Email: lund.eric@dol.gov; ballard.brendan@dol.gov

Attorneys for Plaintiff, R. Alexander Acosta
Secretary of Labor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor,<br><br>Plaintiff,<br><br>v.<br><br>RELIANCE TRUST COMPANY, ERIC BENSEN, RANDALL SMALLEY, ROBERT SMALLEY, JR., FAMILY TRUST CREATED UNDER THE SMALLEY REVOCABLE TRUST DATED JULY 8, 2004, MARITAL TRUST CREATED UNDER THE SMALLEY REVOCABLE TRUST DATED JULY 8, 2004, SURVIVOR'S TRUST CREATED UNDER THE SMALLEY REVOCABLE TRUST DATED JULY 8, 2004, RVR, INC., and RVR EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR ERISA VIOLATIONS** |

Plaintiff, R. Alexander Acosta, Secretary of Labor (the "Secretary") alleges:

1.     RVR Inc. d/b/a Cruise America ("RVR" or "Company") is a Florida corporation with its principal place of business in Mesa, Arizona, that (with its subsidiaries) is engaged in the

rental of custom-built "Class C" recreational vehicles ("RVs") and the sale of used rental RVs in the U.S. and Canada.

2.     To provide retirement income for its employees and the employees of its subsidiaries, RVR sponsored the RVR Inc. Employee Stock Ownership Plan and Trust (collectively the "ESOP" or "Plan"), a pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  The RVR Employee Stock Ownership Trust ("Trust") holds the Plan's assets.

3.     ERISA requires fiduciaries of an employee stock ownership plan who buy stock in the plan's sponsoring company on the plan's behalf to act prudently, with undivided loyalty to the plan, and to pay no more than fair market value for the stock.

4.     This action is filed against four fiduciaries of the Plan and against parties in interest to the Plan who knowingly participated and benefitted, at the Plan's expense, from the fiduciaries' imprudent, disloyal, and prohibited conduct in the purchase of RVR stock for far more than fair market value.

5.     The Plan purchased 100% of the shares of RVR from the Company's principal officers and sole shareholders, Randall Smalley ("Smalley"), through three trusts,[1] Robert Smalley, Jr. ("Smalley Jr."), and Eric Bensen ("Bensen") (collectively "Sellers") on May 28, 2014 ("Transaction").

6.     At the time of the Transaction, Smalley, Smalley Jr., and Bensen controlled every aspect of the Company.  They were the sole members of RVR's Board of Directors ("Board"), the sole members of the committee responsible for administering the Plan ("ESOP Committee"), and the senior most officers of the Company.  They hired Reliance Trust Company ("Reliance") to act as the trustee and independent fiduciary for the Plan in the Transaction.

7.     Reliance caused the Plan to purchase the Company's stock from the Sellers for more than fair market value, paying $105 million for stock that was worth tens of millions of dollars

---

[1]  As more fully discussed herein, Smalley was the co-trustee of three trusts established under the Smalley Revocable Trust dated July 8, 2004 ("Smalley Trusts"), which technically owned his shares in the Company.

less. Reliance violated its fiduciary duties of prudence, loyalty, and adherence to the terms of the Plan and engaged in a transaction prohibited by ERISA by causing the Plan to purchase the stock in the Transaction. Its truncated and compromised review of the fairness of the Transaction catered to the wishes of the Sellers at the expense of the Plan and the Plan's participants and beneficiaries. Moreover, the ESOP did not gain control of the Company after the Transaction, even though it paid an extra amount, called a control premium, to purchase control. Smalley, Smalley Jr., and Bensen maintained their positions as the sole members of the Board and ESOP Committee and as the officers and executives who managed and controlled the operations of the Company. In allowing Reliance to enter into a transaction prohibited by ERISA, Smalley, Smalley Jr., and Bensen violated their duties of prudence, loyalty, and adherence to plan documents and knowingly participated in Reliance's ERISA violations.

## JURISDICTION AND VENUE

8. This action arises under ERISA and is brought by the Secretary to obtain relief under Sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132, to redress violations and enforce the provisions of Title I of ERISA.

9. This Court has subject matter jurisdiction over this action pursuant to ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).

10. Venue lies in the United States District Court for the District of Arizona, pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in Mesa, Arizona, within this district, and the fiduciary breaches and other ERISA violations at issue in this Complaint occurred within this district.

## PARTIES

11. Plaintiff, the Secretary, has the authority to enforce the provisions of Title I of ERISA by, among other means, filing civil actions against fiduciaries who violate ERISA and other parties who knowingly participate in those violations. ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5).

12. At all relevant times, Reliance was a trust company with its principal place of business in Atlanta, Georgia. Reliance acted as the Plan's trustee and independent fiduciary

during the Transaction.  Reliance also acted as the Plan's ongoing trustee until its resignation, effective June 30, 2014.  At all relevant times, Reliance was a Plan trustee under ERISA section 403(a), 29 U.S.C. § 1103(a), and a fiduciary under ERISA sections 3(21)(A)(i), (iii), 29 U.S.C. §§ 1002(21)(A)(i), (iii).  As a fiduciary to the Plan, Reliance was, at all relevant times, a party in interest to the Plan pursuant to ERISA section 3(14)(A), 29 U.S.C. § 1102(14)(A).

13.    Smalley was, at all relevant times, RVR's Chief Executive Officer ("CEO") and a member of RVR's Board and ESOP Committee.  Smalley also was co-trustee of the Smalley Trusts.  Smalley indirectly sold shares equal to 48.35% of RVR's stock to the Plan, through his control of the Smalley Trusts, pursuant to the Transaction.  Smalley signed the Stock Purchase Agreement ("SPA") as trustee of the Smalley Trusts.  As a member of RVR's ESOP Committee, Smalley was, at all relevant times, a named fiduciary under ERISA section 402(a), 29 U.S.C. § 1102(a).  As a member of RVR's Board, Smalley appointed Reliance as Plan trustee for the Transaction and had the authority to remove Reliance as the Plan trustee at any time.  Accordingly, he was a fiduciary under ERISA sections (3)(21)(A)(i) and (iii).  As a fiduciary to the Plan, and a director, officer, and indirect owner of more than 10% of RVR, Smalley was, at all relevant times, a party in interest to the Plan pursuant to ERISA sections 3(14)(A) and (H).

14.    Smalley Jr. was, at all relevant times, RVR's President and a member of RVR's Board and ESOP Committee.  Smalley Jr. owned and sold shares equal to 48.35% of RVR stock to the Plan pursuant to the Transaction.  As a member of RVR's ESOP Committee, Smalley Jr. was, at all relevant times, a named fiduciary under ERISA section 402(a).  As a member of RVR's Board, Smalley Jr. appointed Reliance as Plan trustee for the Transaction and had the authority to remove Reliance as the Plan trustee at any time.  Accordingly, he was a fiduciary under ERISA sections (3)(21)(A)(i) and (iii).  As a fiduciary to the Plan, and a director, officer, and owner of more than 10% of RVR, Smalley Jr. was, at all relevant times, a party in interest to the Plan pursuant to ERISA sections 3(14)(A) and (H).

15.    Bensen was, at all relevant times, RVR's Chief Financial Officer ("CFO") and a member of RVR's Board and ESOP Committee.  Bensen owned and sold shares equal to 3.3% of RVR's stock to the Plan pursuant to the Transaction.  As a member of RVR's ESOP Committee,

Bensen was, at all relevant times, a named fiduciary under ERISA section 402(a).  As a member of RVR's Board, Bensen appointed Reliance as Plan trustee for the Transaction and had the authority to remove Reliance as the Plan trustee at any time.  Accordingly, he was a fiduciary under ERISA sections (3)(21)(A)(i) and (iii).  As a fiduciary to the Plan, and a director and officer of RVR, Bensen was, at all relevant times, a party in interest to the Plan pursuant to ERISA sections 3(14)(A) and (H).

16.   The Smalley Trusts were, at all relevant times, comprised of the Family Trust, the Marital Trust, and the Survivor's Trust, each created under the Smalley Revocable Trust dated July 8, 2004.  At all relevant times, Smalley and his wife were the co-trustees of each of the Smalley Trusts.  Prior to the Transaction, the Smalley Family Trust owned 19.1% of RVR's stock, the Smalley Marital Trust owned 3.4% of RVR's stock, and the Smalley Survivor's Trust owned 25.85% of RVR's stock.  The Smalley Trusts sold shares of RVR stock to the Plan pursuant to the Transaction.  As owners of more than 10% of RVR, the Smalley Family Trust and the Smalley Survivor's Trust were parties in interest to the Plan pursuant to ERISA section 3(14)(H).  The Smalley Marital Trust was a party in interest to the Plan, pursuant to ERISA section 3(14)(G), 29 U.S.C. § 1002(14)(G), because 50 percent or more of the beneficial interest in that trust was owned indirectly or held by a fiduciary—Smalley.

17.   The Plan is an employee benefit plan as defined by ERISA section 3(3), 29 U.S.C. § 1002(3), and is subject to coverage under ERISA pursuant to ERISA section 4(a)(1), 29 U.S.C. § 1003(a)(1).  The Plan is joined as a party defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

18.   At all relevant times, RVR was the Plan sponsor and the named Plan administrator, as defined in ERISA sections 3(16)(A)(i) and (B)(i), 29 U.S.C. §§ 1002(16)(A)(i) and (B)(i).  RVR is a fiduciary of the Plan pursuant to ERISA sections 3(21)(A)(i), (iii).  As a fiduciary, RVR was a party in interest to the Plan pursuant to ERISA § 3(14)(A).  As the employer whose employees are covered by the Plan, RVR also was a party in interest pursuant to ERISA section 3(14)(C), 29 U.S.C. § 1002(14)(C).  RVR is joined as a party defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

## FACTUAL BACKGROUND

### RVR Retained Chartwell To Orchestrate An ESOP Transaction

19.     On February 27, 2014, RVR engaged Chartwell Business Valuation, LLC ("Chartwell") to provide financial advisory and investment banking services for a potential sale of the Company's equity to an employee stock ownership plan to be sponsored by RVR. Chartwell's responsibilities included: (1) recommending a transaction structure to the Sellers and Company; (2) estimating the Company's equity value from the perspective of a Plan trustee's financial advisor; (3) assisting in the engagement of the Plan trustee; and (4) representing the Sellers in negotiations with the Plan trustee.

20.     On April 10, 2014, before RVR had even retained Reliance to be the transactional trustee for the Plan, Chartwell sent to Reliance and Stout Risius Ross, Inc. ("SRR"), an employee stock ownership plan appraisal firm, an agenda for an April 16, 2014 meeting to kick-off the Transaction.  Chartwell, Reliance, and SRR had previously worked together on employee stock ownership plan transactions.  At the April 16, 2014 meeting, the Sellers presented an overview of the Company's operations and future outlook, and a timeline for the proposed Transaction, including a closing date of May 27, 2014.

### RVR Retained Reliance As The Plan Trustee For The Transaction

21.     Reliance signed an engagement letter with RVR dated April 15, 2014 ("Reliance Engagement Letter"), pursuant to which Reliance would act as the Plan trustee and independent fiduciary for the Transaction.  On April 16, 2014, Bensen, as CFO, signed the Reliance Engagement Letter on behalf of the Company.

22.     Reliance's fiduciary responsibilities in the Transaction included: (1) evaluating the proposed Transaction; (2) negotiating the terms of the purchase on behalf of the Plan; (3) determining whether the price proposed for the Company's stock was not more than fair market value; and (4) determining whether the proposed Transaction, including any future management incentive plan adopted, was financially fair to the Plan and its participants.

**Reliance Hired SRR As Its Appraiser And Financial Advisor,
Even Though SRR Lacked Independence**

23.    The Reliance Engagement Letter required that Reliance engage SRR "as an independent appraiser and financial advisor" and that the Company would "pay the reasonable expenses and fees of such independent appraiser."

24.    On April 11, 2014, before the Company had even retained Reliance as the Plan trustee, an SRR employee asked his colleague via e-mail if he should go ahead and reach out to Chartwell to get information in advance of the April 16, 2014 kick-off meeting, noting that he had "just closed a deal with Greg and Ted from Chartwell."

25.    On April 15, 2014, Reliance and SRR entered into an engagement agreement which provided that SRR would render a valuation and opinion of fairness in connection with the Transaction, including whether the consideration to be paid by the Plan for the shares of RVR stock purchased pursuant to the Transaction was not greater than the shares' fair market value. On April 16, 2014, Bensen, as CFO, acknowledged and accepted the SRR engagement letter on behalf of the Company.

**The RVR ESOP**

26.    Through a resolution of the RVR Board on May 22, 2014, the Company established the Plan, effective June 1, 2013.

27.    On May 22, 2014, the Company and Reliance executed a Trust Agreement through which the Company appointed Reliance as the Plan trustee, effective June 1, 2013.  The Trust Agreement provided that the "Company may remove the Trustee at any time" with proper notice.  Bensen signed as CFO on behalf of the Company.  The Board ratified the Trust Agreement through a May 22, 2014 resolution.

28.    Pursuant to the Trust Agreement, Reliance acted as a directed trustee with respect to holding and administering Plan assets, but acted as a discretionary trustee with respect to the decision to invest in or remain invested in employer securities.  The ESOP Committee provided direction to Reliance on matters for which it was a directed trustee.

29.   Section 5.3(a) of the Trust Agreement provides that the Trustee has the discretion to invest in employer securities so long as the Trustee "does not pay in excess of adequate consideration, as defined by ERISA."

30.   Section 5.4 of the Trust Agreement provides that the Trustee shall not "knowingly exercise any powers . . . in a manner that will constitute a prohibited transaction," under ERISA section 406, "for which an exemption does not exist."

31.   The Plan document and the Trust Agreement both provide that no part of the Trust shall "be used for or diverted to any purpose other than for the exclusive benefit of [p]articipants and [b]eneficiaries or the payment of expenses[.]"

### The Transaction

32.   On May 28, 2014, the Plan purchased 100% of RVR's common stock (1,000,000 shares) from the Smalley Trusts, Smalley Jr., and Bensen upon the terms set forth in the SPA. The Plan paid $105 million or $105 per share and became the Company's sole shareholder.

33.   As part of the Transaction, the Company established a management incentive plan ("MIP"), providing for stock appreciation rights ("SARs") up to 238,095 units, or 12.5% of the Company's fully-diluted equity, to be issued to employees at the Board's discretion.  Although Smalley and Smalley Jr. were not eligible to participate in the MIP, Bensen was eligible.  SARs under the MIP were limited to 100,000 units until May 31, 2015, at a strike price of $7.50 per unit.  SARs issued beyond May 31, 2015 had a strike price equal to the fair market value of the Company's common stock at the time of issuance and were contingent on the Company's financial performance.

34.   The Company also issued detachable warrants ("Warrants"), which gave the Smalley Trusts and Smalley Jr. the right to purchase 666,667 shares of Company stock at an exercise price of $7.50 per share.  The Warrants were equivalent to approximately 35% of the Company's stock on a fully-diluted basis.  The Warrants were exercisable, in whole or in part, during the term commencing on June 2, 2014, and ending either on the earlier of (a) June 2, 2029, or (b) the date in which the June 2, 2014 loans from the Smalley Trusts and Smalley, Jr. were paid in full by the Company.

35.     The Plan financed the Transaction with a $104.4 million loan from the Company ("ESOP Loan") and a $598,985 contribution from the Company.  The ESOP Loan matures on May 31, 2054 (40 years).  The Company funded its ESOP Loan to the Plan with: 1) $3,313,108.56 of the Company's existing cash; 2) a $16 million draw from the Company's $75 million revolving line of credit; and 3) proceeds from a bank bridge term loan of $87 million ("Bridge Loan").

36.     The Smalley Trusts and Smalley Jr. loaned $95.88 million to the Company ("Seller Notes") on June 2, 2014.  The Company used the Seller Notes to repay the $87 million Bridge Loan and to repay $8.9 million of the revolving line of credit.

37.     Reliance, in its capacity as Plan trustee, approved the Plan's purchase of 100% of the equity interest in RVR as part of the Transaction.

38.     In authorizing the Transaction on behalf of the Plan, Reliance executed the ESOP Loan-Pledge Agreement, SPA, Note for the ESOP Loan, and an Investor Rights Agreement ("IRA").

### SRR's Valuation Report

39.     SRR's valuation report concluded that the 100% stake in RVR under the terms of the Transaction was worth between $104,900,000 and $114,400,000.  Reliance relied on this valuation when it agreed to the $105 million purchase price.

40.     SRR used two valuation models to which it assigned equal weight: (1) the Discounted Cash Flow ("DCF") model; and (2) the Guideline Company Method ("GCM") model.  After equally weighting and blending the results of these two methods, SRR then applied certain enterprise-level adjustments to derive a purported range of fair market values for the Company's equity as of the Transaction date.

41.     SRR's valuation report contained a number of red flags, including the following: (1) failing to sufficiently account for lack of market comparability in its GCM model; (2) using an unreasonably high terminal enterprise value; (3) applying an inappropriate discount rate; (4) applying an insufficient discount for RVR's limited marketability; (5) failing to account for the Plan's lack of control over RVR; (6) failing to discount the fair market value of RVR's stock to

account for the dilutive effects of the Warrants and SARs; and (7) overestimating RVR's cash balance prior to the Transaction.

**Reliance Rushed Its Investigation Into The Transaction**

42. Reliance investigated and approved the Transaction on an abbreviated timeline dictated by Chartwell and the Sellers. The agenda sent to Reliance and SRR on April 10, 2014, included a pre-determined timeline for the Transaction, including a "hard" closing date of May 27, 2014. Rather than questioning the brevity of Chartwell's timeline, Reliance committed itself to meeting the timeline despite not having received proposed terms from Chartwell until April 21, 2014, and not receiving documents necessary for SRR's valuation analysis until April 24, 2014.

43. Reliance met the Sellers' timeline by truncating its review process. For example, the April 16, 2014 meeting was the only face-to-face meeting SRR and Reliance had with the Sellers/RVR's management team, and SRR never met individually with the management team to investigate the information provided. SRR's initial valuation was based on the Sellers' proposed term sheet and was issued on May 2, 2014, *before* SRR had all relevant information, which SRR was still receiving from Chartwell on a rolling basis. Moreover, the SRR's initial draft valuation was sent to Reliance for review only three days before Reliance's Trust Committee meeting. Despite these shortcomings, Reliance used SRR's initial draft valuation as the basis for: (1) its assessment of the Transaction at its May 5, 2014 Trust Committee meeting; (2) its May 5, 2014 counter-offer of $100 million; and (3) its agreement to the $105 million purchase price on May 13, 2014.

44. The Transaction documents were signed May 27, 2014—the date Chartwell and the Sellers dictated to Reliance.

**Reliance Failed To Adequately Review And Question SRR's Valuation Report**

45. At a May 5, 2014 meeting where SRR's initial draft valuation was supposedly reviewed, Reliance's Trust Committee asked only one substantive question regarding the valuation—whether the Company was comparable to entities used in the GCM model (*e.g.* Hertz and Avis)—and requested that SRR expound on its cash flow analysis. Reliance's legal counsel

informed the Committee that its legal due diligence was still ongoing and that compensation paid to the management team was high and being paid pursuant to in-place employment agreements. Nevertheless, that same day, on Monday, May 5, 2014, Reliance authorized a counter-offer of $100 million with 25% Warrants and 10% SARs based upon SRR's valuation.

46.   SRR issued its second valuation on May 21, 2014, the day before Reliance's Trust Committee approved the Transaction.  Reliance, therefore, had only one day to review the second draft of the valuation report—which included updated figures— and to identify, question, and test SRR's underlying assumptions before it approved the Transaction on May 22, 2014. Significantly, the terms of the deal were not finalized at the time Reliance approved the Transaction.  The IRA, amended bylaws, amended employment agreements, and details relating to the Warrants and MIP were being finalized up to a day or two before the closing date. Moreover, only two of Reliance's Trust Committee members were in attendance at the May 22, 2014 meeting, and they had not received their legal counsel's memorandum explaining its due diligence review until the night before the meeting.

47.   Although SRR substituted new numbers for the purchase price, ESOP Loan, Seller Notes, Warrants, and SARs in its second valuation, the range of fair market value of RVR's equity was identical to the first draft—$104,900,000 to $114,400,000.  Reliance's Trust Committee did not ask why the range had not changed.  Similarly, there was no discussion of whether SRR should have reduced the equity value it assigned to RVR.  The important issues of lack of marketability, lack of comparability, discount rate, and terminal enterprise value, and the effects they had on the valuation, also were not raised at the Committee meeting.  Although the Committee expressed concern that corporate governance was restricted to management—the Sellers—it did not discuss the impact of this issue on the valuation or discuss whether it would be prudent to delay the Transaction until all terms and documents were finalized and their fairness analyzed.

**Reliance Failed To Negotiate In Good Faith Over The Transaction Terms**

48.   Reliance accepted a purchase price of $105 million for the RVR stock just eight days into the negotiations, and before it had any meaningful opportunity to review and assess the

terms of the proposed Transaction.  In addition to paying more than fair market value for the stock, the Plan received no position on the Board or control over the Company—even though it paid a control premium—and agreed to employment terms that unreasonably favored Smalley, Smalley Jr., and Bensen.

**Indemnification Provisions**

49.    Section 12.6 of the Plan document provides for the Plan's reimbursement of Reliance and the ESOP Committee for legal costs arising from their breaches of ERISA-imposed fiduciary duties.

50.    Section 12.6 of the Plan provides that "[u]nless otherwise prohibited by law, either [RVR] or the Trust, in the sole discretion of [RVR], will reimburse the Trustee and/or the Administrator for all costs, attorney's fees and other expenses associated with any such [ERISA] claim, suit or proceeding."

51.    Section 12.6, which specifically references the Plan's reimbursement of the Trustee (Reliance) and Administrator (ESOP Committee) for legal costs arising from their breaches of ERISA-imposed fiduciary duties, contains no exclusions.

52.    Section 12.14 of the Plan provides that RVR "will indemnify and hold harmless its board of directors . . ., the Committee . . ., and its officers, Employees, and agents against and with respect to any and all expenses, losses, liabilities, costs, and claims, including legal fees to defend against such liabilities and claims, arising out of their good-faith discharge of responsibilities under or incident to the Plan, excepting only expenses and liabilities resulting from willful misconduct."

53.    Section 12.14, which further provides that "payments with respect to any indemnity and payment of expenses or fees under this Section will be made only from assets of the Employer, and will not be made directly or indirectly from assets of the Trust," excludes "expenses and liabilities resulting from willful misconduct."  Although section 12.14 precludes indemnification for a finding of "willful misconduct," a fiduciary could conceivably breach its ERISA fiduciary duties without committing willful misconduct.

54.    RVR also agreed in the Reliance Engagement Letter and Trust Agreement to indemnify Reliance "against and from any and all claims, damages, expense, liabilities, and losses whatsoever . . . relating to the Transaction or Reliance's duties as ESOP trustee."  These indemnification provisions do not apply only to the extent that any such claim, damages, expense, liabilities, or losses have resulted from Reliance's "bad faith, breach of fiduciary duty under ERISA, gross negligence, willful misconduct, or a material breach of the terms of this letter or any subsequent agreement."  Until a court weighs in, the "exception" has no teeth, and does nothing to prohibit potentially illegal indemnification of Reliance.

55.    RVR's payment of losses, legal fees, and expenses for Reliance, Smalley, Smalley Jr., and Bensen would diminish the value of the Company, which in turn, would reduce the value of the Plan's stock in the Company.  To the extent that Reliance, Smalley, Smalley Jr., and Bensen are permitted to recover money from RVR pursuant to any indemnification provision that would relieve them from liability for the ERISA violations described herein, such payments would violate ERISA and render the indemnification provisions void under ERISA section 410(a), 29 U.S.C. § 1110(a).

### FIRST CLAIM FOR RELIEF
### (Against Defendant Reliance For Engaging In A Prohibited Transaction)

56.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 55.

57.    As a fiduciary to the Plan, Reliance was prohibited from causing or permitting the Plan to engage in a transaction that constitutes the sale or exchange of property between the Plan and a "party in interest" to the Plan, and was prohibited from transferring any assets of the Plan to a "party in interest."  ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D).

58.    Smalley, Smalley Jr., and Bensen were each a "party in interest" to the Plan under ERISA sections 3(14)(A) and (H), 29 U.S.C. §§ 1002(14)(A) and (H).

59.    The Smalley Trusts were each a "party in interest" to the Plan under ERISA sections 3(14)(A), (G), and (H), 29 U.S.C. §§ 1102(14)(A),(G), and (H).

60.   By causing the Plan to purchase RVR's stock from the Smalley Trusts, Smalley Jr., and Bensen at a price in excess of fair market value and pursuant to the Transaction, Reliance:

a.   caused the Plan to engage in a transaction that it knew or should have known constituted the sale or exchange, or leasing, of any property between the Plan and parties in interest, in violation of ERISA section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A);

b.   caused the Plan to engage in a transaction that that it knew or should have known constituted direct or indirect transfers of the Plan's assets to, or use of the Plan's assets by or for the benefit of, parties in interest, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

61.   As a result of the conduct described above, Reliance caused losses to the Plan and is liable to make good to the Plan those losses and to restore to the Plan any profits it made in the Transaction pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

### SECOND CLAIM FOR RELIEF
**(Against Defendant Reliance For Breaching Fiduciary Duties Of Loyalty, Prudence, And Adherence To Plan Documents)**

62.   Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 61.

63.   As a fiduciary to the Plan, Reliance had a duty to act prudently and solely in the interests of the Plan and its participants and beneficiaries and to adhere to plan documents. These duties required Reliance to, among other things, hire an independent appraiser; undertake a good faith investigation of the merits of the Transaction and any red flags that arose; conduct good faith negotiations over the Transaction's price and other material terms; and thoroughly review, analyze, and question any valuation report on which it relied.  Reliance failed in each of these respects and caused the Plan to purchase the Company's stock for significantly more than fair market value.

64.   Reliance hired SRR, who was not truly independent, given the prior business dealings and referral relationships between and among Chartwell, Reliance, and SRR.

65.   Reliance rushed its investigation into the Transaction.

66.   Reliance failed to provide SRR with complete information necessary to produce a reliable valuation report.

67.   Reliance failed to adequately scrutinize and critically question SRR's valuation reports.

68.   Reliance did not negotiate in good faith over the stock purchase price and other terms of the Transaction.

69.   By the foregoing conduct, Reliance:

    a.   failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

    b.   failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and

    c.   failed to act in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA, in violation of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

70.   As a result of the conduct described above, Reliance caused losses to the Plan and is liable to make good to the Plan those losses and to restore to the Plan any profits it made in the Transaction pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

**THIRD CLAIM FOR RELIEF**
**(Against Smalley, Smalley Jr., And Bensen For Breach of Fiduciary Duties Of Loyalty, Prudence, And Adherence To Plan Documents)**

71.   Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 70.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

72.   By virtue of their decision, as the sole members of RVR's Board, to appoint Reliance as the Plan trustee, and by their authority to remove Reliance as Trustee, Smalley, Smalley Jr., and Bensen had a fiduciary duty to monitor Reliance Trust.

73.   Smalley, Smalley Jr., and Bensen knew or should have known about the circumstances that rendered the Transaction illegal under ERISA, including that Reliance's investigation of RVR's fair market value was flawed.  Smalley, Smalley Jr., and Bensen should have declined to participate in the illegal Transaction, and replaced the Trustee to ensure that that the investigation of RVR's fair market value and the Trustee's representation of the Plan's interests had satisfied ERISA's requirements.  As a result, Smalley, Smalley Jr., and Bensen failed to fulfill their duty to monitor Reliance, the Plan's Trustee, and to take appropriate action to protect the participants and beneficiaries in violation of ERISA sections 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

74.   As a result of the conduct described above, Smalley, Smalley Jr., and Bensen caused losses to the Plan and are liable to make good to the Plan those losses and to restore to the Plan any profits they made in the Transaction pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

## FOURTH CLAIM FOR RELIEF
### (Against Defendants Smalley, Smalley Jr., And Bensen For Co-fiduciary Liability For Reliance's Breaches)

75.   Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 74.

76.   In addition to their liability alleged in the Third Claim for relief, Smalley, Smalley Jr., and Bensen are liable as fiduciaries for Reliance's breaches under ERISA section 405(a), which makes a fiduciary "liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . (1) if he participates knowingly in . . . an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or 3) if he

has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. §§ 1105(a)(1), (2), and (3).

77.   As set forth above, Smalley, Smalley Jr., and Bensen knew that Reliance failed to hire an independent appraiser, rushed its investigation into the Transaction, failed to provide SRR with complete information, failed to adequately investigate SRR's valuation report, failed to negotiate in good faith, and caused the Plan to purchase RVR stock for more than fair market value.  Yet, they did not take any action to prevent or remedy the Transaction.  As a result, Smalley, Smalley Jr., and Bensen "participate[d] knowingly" in Reliance's breach of its fiduciary duties to the Plan, and are jointly and severally liable for Reliance's breaches pursuant to ERISA section 405(a)(1), 29 U.S.C. § 1005(a)(1).

78.   By failing in their duty to monitor Reliance in violation of ERISA section 404(a)(1), 29 U.S.C. § 1004(a)(1), Smalley, Smalley Jr., and Bensen enabled Reliance to engage in a prohibited transaction and breach its fiduciary duties to the Plan, and are jointly and severally liable for Reliance's breaches pursuant to ERISA section 405(a)(2), 29 U.S.C. § 1005(a)(2).

79.   Despite knowing that Reliance breached its fiduciary duties to the Plan as set forth above, Smalley, Smalley Jr., and Bensen failed to make reasonable efforts to fully remedy the breaches, and are jointly and severally liable for Reliance's breaches pursuant to ERISA section 405(a)(3), 29 U.S.C. § 1005(a)(3).

### FIFTH CLAIM FOR RELIEF
**(Against Smalley, Smalley Jr., Bensen, And The Smalley Trusts For Knowing Participation In Reliance's Fiduciary Breaches)**

80.   Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 79.

81.   Smalley, Smalley Jr., Bensen, and the Smalley Trusts knew or should have known about the circumstances that rendered the Transaction illegal under ERISA.  Specifically, Smalley, Smalley Jr., Bensen, and the Smalley Trusts knew that Reliance failed to hire an independent appraiser, rushed its investigation into the Transaction, failed to provide SRR with complete information, failed to adequately review and question SRR's valuation report, failed to

negotiate in good faith, and caused the Plan to purchase RVR stock for more than fair market value.  Yet, they did not take any action to prevent or remedy the Transaction.  Smalley, Smalley Jr., Bensen, and the Smalley Trusts should have declined to participate in the illegal Transaction. Smalley, Smalley Jr., Bensen, and the Smalley Trusts should have replaced the Trustee to ensure that that the investigation of RVR's fair market value and the Trustee's representation of the Plan's interests had satisfied ERISA's requirements.

82.   Therefore, Smalley, Smalley Jr., Bensen, and the Smalley Trusts knowingly participated in Reliance's violation of ERISA sections 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) and 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D).

83.   Smalley, Smalley Jr., Bensen, and the Smalley Trusts benefitted from the Plan's purchase of the Company stock in the Transaction and are liable to disgorge or otherwise restore to the Plan the excessive amount under ERISA section 502(a)(5), 29 U.S.C. § 1132(a)(5).

## SIXTH CLAIM FOR RELIEF
### (Against Defendant Reliance To Void Indemnification Agreements Under ERISA)

84.   Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 83.

85.   ERISA section 410(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty under this part shall be void as against public policy."  29 U.S.C. § 1110(a).  A fiduciary is impermissibly relieved of responsibility or liability for its ERISA fiduciary duties when an ERISA plan itself bears some of the burden of indemnifying a fiduciary for its fiduciary breaches.  29 C.F.R. § 2509.75-4.

86.   As set forth in paragraphs 49 through 55 above, Sections 12.6 and 12.14 of the Plan document could require the Plan to reimburse Reliance and others for legal costs arising from its breaches of ERISA fiduciary duties.

87.   As set forth in paragraphs 54 and 55 above, the indemnification provisions in the Reliance Engagement Letter and Trust Agreement could require the Company—and, in turn, the Plan as the Company's sole owner—to reimburse Reliance for all claims, damages, expenses,

liabilities, and losses incurred in connection with the Transaction or Reliance's performance as Plan trustee in circumstances where Reliance has breached its ERISA fiduciary duties.

88.    By potentially requiring the Plan to indemnify Reliance even where it has breached its fiduciary duties, the indemnification provisions in the Plan, Engagement Letter, and Trust Agreement are void under ERISA section 410(a), 29 U.S.C. § 1110(a).

**SEVENTH CLAIM FOR RELIEF**
**(Against Defendants Smalley, Smalley Jr., And Bensen To Void Indemnification Agreements Under ERISA)**

89.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 88.

90.    As set forth in paragraphs 49 through 53 above, Sections 12.6 and 12.14 of the Plan could require the Plan or RVR to reimburse the members of the ESOP Committee and others for expenses, losses, liabilities, costs, and claims arising from their breaches of ERISA fiduciary duties.

91.    By potentially requiring the Plan to indemnify Smalley, Smalley Jr., and Bensen, even where they have breached their fiduciary duties, the indemnification provisions in the Plan are void under ERISA section 410(a), 29 U.S.C. § 1110(a).

**PRAYER FOR RELIEF**

WHEREFORE, the Secretary of Labor prays that this Court enter an Order:

1.    Requiring Reliance to restore all losses caused to the Plan as a result of Reliance's fiduciary breaches, plus interest.

2.    Requiring Reliance to disgorge, and restore to the Plan, all profits, including all fees earned, from the Transaction, plus interest.

3.    Requiring Smalley, Smalley Jr., and Bensen to restore all losses caused to the Plan as a result of their fiduciary breaches, plus interest.

4.    Requiring Smalley, Smalley Jr., and Bensen to restore all losses caused to the Plan as a result of Reliance's fiduciary breaches, plus interest.

5.    Imposing a constructive trust or equitable lien on the proceeds the Smalley Trusts, Smalley Jr., and Bensen received from the Transaction.

6. Requiring the Smalley Trusts, Smalley Jr., and Bensen to account for, disgorge, and restore to the Plan all proceeds and unjust profits realized from the Transaction, plus interest.

7. Declaring the indemnification provisions in the Plan, Reliance Engagement Letter, and Trust Agreement void under ERISA with respect to Reliance, enjoining Reliance from seeking or receiving any payments under these indemnification provisions, and requiring Reliance to repay any amounts paid by the Company or the Plan pursuant to these indemnification provisions.

8. Declaring the indemnification provisions in the Plan void under ERISA with respect to Smalley, Smalley Jr., and Bensen, enjoining Smalley, Smalley Jr., and Bensen from seeking or receiving any payments under these or any other indemnification provisions, and requiring them to repay any amounts paid by the Company or the Plan pursuant to these indemnification provisions.

9. Granting such other relief as may be equitable, just and proper, including injunctive relief.

Dated:  May 16, 2019

Respectfully Submitted:

KATE S. O'SCANNLAIN
Solicitor of Labor

G. WILLIAM SCOTT
Associate Solicitor
Plan Benefits Security

GLENN M. LOOS
Counsel for Litigation

/s/ Eric C. Lund_____
ERIC C. LUND
Senior Trial Attorney

BRENDAN BALLARD
Trial Attorney

United States Department of Labor
Office of the Solicitor

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plan Benefits Security Division
P.O. Box 1914
Washington, D.C. 20013
lund.eric@dol.gov
ballard.brendan@dol.gov
Direct:  (202) 693-5600
Facsimile:  202-693-5610

Attorneys for Plaintiff, R. Alexander
Acosta, Secretary of Labor