1  ERIC C. LUND, D.C. Bar No. 450982
   BRENDAN BALLARD, D.C. Bar No. 978631
2  U.S. Dept. of Labor, Office of the Solicitor
3  Plan Benefits Security Division
   P.O. Box 1914
4  Washington, D.C. 20013
   Telephone: (202) 693-5600, Facsimile: (202) 693-5610
5  Email: lund.eric@dol.gov; ballard.brendan@dol.gov

6
   Attorneys for Plaintiff Patrick Pizzella,
7  Acting Secretary of Labor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Pizzella, Acting Secretary of Labor,<br><br>        Plaintiff,<br><br>    v.<br><br>Reliance Trust Company, Eric Bensen, Randall Smalley, Robert Smalley, Jr., Family Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, Marital Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, Survivor's Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, RVR, Inc., and RVR Employee Stock Ownership Plan,<br>        Defendants. | Civil Action No. 2:19-cv-03178-JJT<br><br>**ACTING SECRETARY OF LABOR'S OPPOSITION TO DEFENDANTS' JULY 29, 2019 MOTION TO DISMISS COMPLAINT** |

Patrick Pizzella, Acting Secretary of Labor ("Secretary"),[1] hereby respectfully submits this Opposition to the July 29, 2019 Motion to Dismiss ("Motion" or "MTD") filed on behalf of Eric Bensen, Randall Smalley, Robert Smalley, Jr., the Family Trust Created Under the Smalley Revocable Trust Dated July 8, 2004, the Marital Trust Created Under the Smalley Revocable

---

[1] On Monday, July 22, 2019, Patrick Pizzella became Acting Secretary.

1

Trust Dated July 8, 2004, the Survivor's Trust Created Under The Smalley Revocable Trust Dated July 8, 2004 (collectively "Defendants"),[2] and RVR, Inc. ("RVR" or the "Company").

## I. INTRODUCTION

The Secretary's Complaint alleges that Defendants Randall Smalley ("Smalley"), Robert Smalley, Jr. ("Smalley Jr."), and Eric Bensen ("Bensen") (collectively "Director Defendants") enriched themselves at their employees' expense by selling their shares in RVR to the RVR Employee Stock Ownership Plan and Trust ("ESOP" or "Plan")—over which they exercised fiduciary oversight—for far more than those shares were worth. As the allegations in the Complaint demonstrate, the transaction at issue was the result of a pre-ordained, rushed process in which the Director Defendants, with the help of their financial advisor, set terms that were unreasonably favorable to themselves and unfair to the Plan and then hired a trustee to represent the Plan's interests that they knew would do little more than rubberstamp the deal. Despite directly benefitting from this scheme that resulted in significant violations of the Employee Retirement Income Security Act ("ERISA"), Smalley, Smalley Jr., Bensen, and the Smalley Trusts now ask the Court to dismiss them from the case. In so doing, Defendants ignore controlling Ninth Circuit authority, misstate the law on the duty to monitor, and gloss over detailed factual allegations in the Complaint that sufficiently allege their ERISA violations.[3] The Motion also argues that RVR should be dismissed from the case even though the Complaint requests relief that will require the Company's involvement as a plan sponsor and administrator, making it a necessary party under Federal Rule of Civil Procedure ("Rule") 19.

## II. FACTUAL BACKGROUND

Smalley, Smalley Jr., and Bensen created the Plan, an ERISA-governed employee stock ownership plan, so that they could sell their equity in RVR to the Plan at an inflated price, all the

---

[2] Randall Smalley is the co-trustee of three trusts established under the Smalley Revocable Trust Dated July 8, 2004 ("Smalley Trusts"), which technically owned his shares in RVR. Compl. ¶ 6, n. 1.

[3] Defendants ironically dedicate nearly five pages of their Motion to a section entitled "Summary of Allegations," MTD at 2-6, but argue that the Secretary fails to allege "any" facts to support his claims against Defendants. MTD at 2.

2

while retaining control of RVR and benefiting from the favorable tax treatment ERISA plans receive. Smalley, Smalley Jr., and Bensen were not passive participants in the May 28, 2014 transaction ("Transaction") in which they sold all of their stock in RVR to the Plan for $105 million, plus millions more in warrants.[4] Rather, as alleged in detail in the Complaint, the Director Defendants designed the Transaction through their financial advisor and knowingly secured an inflated, flawed appraisal from a firm with which their financial advisor had an ongoing business and referral relationship. Despite participating in a perfunctory due diligence and negotiation process, all parties involved in the Transaction, including the Defendants, were aware that the job of the trustee, who was armed with the inflated appraisal, was to approve the Transaction on terms substantially similar to those proposed at the outset of the engagement.

RVR is a company based in Mesa, Arizona, that rents recreational vehicles ("RVs") and sells the used rental RVs. Compl. ¶ 1. Until the Transaction, the Company was 48.35% owed by Smalley (through his control of the Smalley Trusts), 48.35% owned by Smalley Jr., and 3.3% owned by Bensen. Id. ¶¶ 13-16. On May 22, 2014, the Company established the Plan, with a retroactive effective date of June 1, 2013. Id. ¶ 26. Prior to the Transaction, Smalley, Smalley Jr., and Bensen controlled every aspect of the Company. Id. ¶ 6. They were the sole members of RVR's Board of Directors ("Board"), the sole members of the committee responsible for administering the Plan ("ESOP Committee"), and the senior most officers of the Company. Id. ¶¶ 6, 13-15.

On February 27, 2014, the Defendants hired Chartwell Business Valuation, LLC ("Chartwell") to orchestrate the Transaction. Id. ¶ 19. Chartwell had previously worked with Reliance Trust Company ("Reliance") and Stout Risius Ross ("SRR") (an appraisal firm) on other ESOP transactions, and sent them an agenda for a Transaction "kick-off meeting" before they had even been formally retained by the Company to act on behalf of the Plan. Id. ¶ 20. On

---

[4] As part of the Transaction, the Smalley Trusts and Smalley Jr. received detachable warrants that gave them the right to purchase 666,667 shares of RVR stock at an exercise price of $7.50 per share. Compl. ¶ 34. The warrants were equivalent to approximately 35% of the Company's stock on a fully-diluted basis. Id.

3

April 11, 2014, an SRR employee asked his colleague via e-mail if he should go ahead and reach out to Chartwell to get more information in advance of the kick-off meeting, noting that he had "just closed a deal with Greg and Ted from Chartwell." Id. ¶ 24. Smalley, Smalley Jr., and Bensen participated in the kick-off meeting, where they presented to Reliance and SRR an overview of the Company's operations and future outlook, and the tight timeline for the proposed Transaction, including a hard closing date of May 27, 2014. Id. ¶ 20.

RVR and the Director Defendants ultimately hired Reliance to act as the Plan's trustee and independent fiduciary for the Transaction, and had the ability to remove and replace Reliance at any time. Id. ¶¶ 6, 13-15, 21. Reliance's fiduciary responsibilities included: (1) evaluating the proposed Transaction; (2) negotiating the terms of the purchase on behalf of the Plan; (3) determining whether the price proposed for the Company's stock was not more than fair market value; and (4) determining whether the proposed Transaction, including any future management incentive plan adopted, was financially fair to the Plan and its participants. Id. ¶ 22. As part of the Company's retention of Reliance, Reliance was required to use SRR to value RVR's stock and the Company would pay SRR's fees directly. Id. ¶ 23. The engagement letter and Trust agreement between RVR and Reliance were signed by Bensen and ratified by the Board. Id. ¶¶ 21, 25, 27. Bensen, as CFO, also acknowledged and accepted the SRR engagement letter on behalf of RVR. Id. ¶ 25.

Shortly after the kick-off meeting, Chartwell sent to Reliance and SRR the Defendants' valuation of RVR and proposed terms for the Transaction, which contemplated a purchase price of over $100 million, along with warrants, stock appreciation rights ("SARs"),[5] and interest on the Defendants' financing of the Plan's purchase. Id. ¶¶ 32-36, 42. SRR's initial valuation was based on the Defendants' proposed term sheet and was issued on May 2, 2014, before SRR had all relevant information, which SRR was still receiving from Chartwell on a rolling basis. Id. ¶

---

[5] As part of the Transaction, the Company established a management incentive plan ("MIP"), providing for SARs up to 238,095 units, or 12.5% of the Company's fully-diluted equity, to be issued to employees at the Board's discretion. Compl. ¶ 33. Although Smalley and Smalley Jr. were not eligible to participate in the MIP, Bensen was eligible. Id.

4

43. SRR's initial draft valuation was sent to Reliance for review only three days before Reliance's Trust Committee was scheduled to meet regarding the proposed Transaction. Id. Despite these shortcomings, Reliance used SRR's initial draft valuation as the basis for: (1) its assessment of the Transaction at its May 5, 2014 Trust Committee meeting; (2) its May 5, 2014 counter-offer to the Defendants of $100 million; and (3) its agreement to the $105 million purchase price on May 13, 2014. Id. SRR issued its second valuation on May 21, 2014, the day before Reliance's Trust Committee formally approved the Transaction. Id. ¶ 46. Reliance, therefore, had only one day to review the second draft of the valuation report—which included updated figures provided by Defendants—and to identify, question, and test SRR's underlying assumptions before it approved the Transaction on May 22, 2014. Id. Significantly, the terms of the deal were not finalized at the time Reliance approved the Transaction. Id. The Investor Rights Agreement, amended bylaws, amended employment agreements, and details relating to the warrants and SARs—all of which were negotiated based on the Defendants' demands—were being finalized up to a day or two before the closing date. Id.

SRR's second valuation report concluded that the 100% stake in RVR under the terms of the Transaction was worth between $104,900,000 and $114,400,000, but it contained a number of errors, including: (1) failing to sufficiently account for lack of market comparability; (2) using an unreasonably high terminal enterprise value; (3) applying an inappropriate discount rate; (4) applying an insufficient discount for RVR's limited marketability; (5) failing to account for the Plan's lack of control over RVR; (6) failing to discount the fair market value of RVR's stock to account for the dilutive effects of the warrants and SARs; and (7) overestimating RVR's cash balance prior to the Transaction. Id. ¶¶ 39-41. These errors all inured to the benefit of Smalley, Smalley, Jr., Bensen, and the Smalley Trusts by improperly inflating the value of the RVR stock.

As set forth above and in the Complaint, Reliance and its attorneys went through the motions of a negotiation but ultimately agreed to nearly all of the Defendants' demands. In addition to paying $105 million to the Smalley Trusts, Smalley Jr., and Bensen, the Plan received

no position on the Board, ceded warrants equaling approximately 35% of the Company's fully-diluted equity back to the Smalley Trusts and Smalley Jr., and became bound to pay for the MIP and interest on the Defendants' financing of the Plan's purchase. Compl. ¶ 48. Despite the Plan's payment of a premium to acquire control of the Company, Smalley, Smalley Jr., and Bensen retained control as the sole members of RVR's Board and ESOP Committee and as the CEO, President, and CFO responsible for overseeing the Company's day-to-day operations. Id. The Director Defendants' amended employment agreements, which had unreasonably favorable compensation and severance terms, further cemented their control over the Company and complicated any potential sale of the Company to a third party after the Transaction. Id. ¶¶ 45-46. In fact, the Transaction resulted in no meaningful change for the Director Defendants, other than receiving $105 million and additional benefits from the Plan.

## III.    DISCUSSION

### A.    Standard For Reviewing Rule 12(b)(6) Motions To Dismiss

Rule 8(a) provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." A motion to dismiss for failure to state a claim on which relief can be granted is a disfavored motion not to be granted lightly. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009). Although "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" Id. at 1067–68 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Secretary's Complaint easily meets this standard with regard to the claims challenged in Defendants' Motion.

B.  **The Complaint Plausibly Alleges That Smalley, Smalley Jr., And Bensen Breached Their Fiduciary Duty To Monitor Reliance.**

An ERISA fiduciary must act for the exclusive benefit of plan participants and beneficiaries and must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).  These duties are the "highest known to the law."  Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996) (citing Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir.), cert. denied, 459 U.S. 1069 (1982)).

Smalley, Smalley Jr., and Bensen do not and cannot dispute that they were fiduciaries under ERISA sections 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (ii), by virtue of their authority to appoint and remove Reliance as Plan trustee, and that they had a resulting fiduciary duty to monitor Reliance's performance.  See Johnson v. Couturier, 572 F.3d 1067, 1077 (9th Cir. 2009); Henry v. Frontier Indus., 863 F.2d 886, 1988 WL 132577, at *2 (9th Cir. 1988) (unpublished); Batchelor v. Oak Hill Med. Grp., 870 F.2d 1446, 1448-49 (9th Cir. 1989); Carr v. Int'l Game Tech., 770 F. Supp. 2d 1080, 1090 (D. Nev. 2011) ("Case law under ERISA indicates that the power to appoint and remove an ERISA fiduciary gives rise to a duty to monitor and results in the appointing and removing party being a de facto fiduciary with respect to such appointment, monitoring and removal.").

The Complaint outlines the circumstances that rendered the Transaction illegal under ERISA, Compl. ¶¶ 1-70, and alleges that the Director Defendants breached their undisputed duty to monitor Reliance because "they knew or should have known about the circumstances that rendered the Transaction illegal under ERISA," id. ¶ 73.  See Henry, 863 F.2d 886, 1988 WL 132577, at *3 (a fiduciary with a duty to monitor a trustee is liable for the trustee's fiduciary breach if he "knew or should have known" about the trustee's misconduct and failed to take steps to remedy the situation).

Defendants first mistakenly argue that the "vast majority of courts to consider the issue"

have rejected the "knew or should have known" standard in favor of an actual knowledge standard. MTD at 7. To the contrary, of the four cases Defendants cite to support this sweeping proposition, only the district court in Solis v. Webb, 931 F. Supp. 2d 936, 955 (N.D. Cal. 2012), adopted an actual knowledge standard. As is evident merely from reading the parentheticals in Defendants' Motion, the other three cases on which Defendants rely applied a "notice" standard. MTD at 7-8. Contrary to Defendants' characterization, "[a] person has notice of a fact or condition" not just if that person "(1) has actual knowledge of it," but also if he or she "(2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording." Black's Law Dictionary (11th ed. 2019). The latter three scenarios fall squarely within a "should have known" standard. Moreover, more recently, and consistent with the Ninth Circuit's unpublished decision in Henry, at least two district courts from within the Ninth Circuit have explicitly applied a "knew or should have known" standard to the duty to monitor in analogous ESOP cases. See, e.g., Acosta v. Saakvitne, 355 F. Supp. 3d 908, 923 (D. Haw. 2019); Solis v. Couturier, No. 2:08-cv-02732-RRB-GGH, 2009 WL 1748724, at *7 (E.D. Cal. June 19, 2009). In adopting the "knew or should have known" standard to deny the Saakvitne defendants' motion to dismiss, the Hawaii district court aptly explained that a "proper understanding of the duty to monitor recognizes that a fiduciary may not enable and participate in a trustee's breach of ERISA duties." 355 F. Supp. 3d at 923 (emphasis added).

Defendants next argue that the Secretary's duty to monitor claims fail because the Complaint does not contain any factual allegations that Smalley, Smalley Jr., and/or Bensen were "on notice" that Reliance failed to perform its responsibilities or acted in any manner that would violate ERISA. MTD at 14. To the contrary, the Complaint alleges that Smalley, Smalley Jr., and Bensen "knew that Reliance failed to hire an independent appraiser, rushed its investigation into the Transaction, failed to provide SRR with complete information, . . . failed to negotiate in good faith, and caused the Plan to purchase RVR stock for more than fair market value." Compl. ¶ 77. Even more specifically, the Complaint alleges that: (1) the Director Defendants attended a

8

meeting with Reliance and SRR at which they dictated the abbreviated timeline and a "hard" closing date for the Transaction, id. ¶¶ 20, 42; (2) Defendant Bensen, on behalf of RVR, signed the engagement letter with Reliance, which required Reliance to engage SRR as the appraiser for the Transaction, id. ¶ 23; (3) SRR and Reliance only met with the Director Defendants one time to gather information about RVR, and SRR never met individually with the Director Defendants to investigate the information provided, id. ¶ 43; (4) the Transaction documents were signed May 27, 2014—the date Chartwell and the Director Defendants dictated to Reliance, id. ¶ 44; (5) Reliance accepted a purchase price of $105 million for the RVR stock just eight days into the negotiations, id. ¶ 48; (6) the Plan agreed to employment terms that unreasonably favored Smalley, Smalley Jr., and Bensen, id. ¶ 48; and (7) even though the Plan paid a premium to purchase control of the Company, the Director Defendants "maintained their positions as the sole members of the Board and ESOP Committee and as the officers and executives who managed and controlled the operations of the Company," id. ¶¶ 7, 48. Accordingly, even if the standard were "actual knowledge" of Reliance's misconduct, the Complaint sets forth sufficient factual allegations to meet this standard.

In the Webb case on which Defendants' rely, the court denied the defendants' motion to dismiss the monitoring claims on the ground that the Secretary sufficiently alleged that the defendants knew about circumstances that could have rendered the transaction imprudent, "yet allowed the stock purchase to occur." 931 F. Supp. 2d at 951. The allegations in the Webb complaint were on par with the allegations here, and the Secretary most certainly did not separately allege that the director defendants had knowledge of each and every fact underlying the primary fiduciary's imprudence, as Defendants suggest is required here. Under Iqbal and Twombly, the Secretary has plead sufficient facts to "allow[] the court to draw the reasonable inference" that Smalley, Smalley Jr., and Bensen had knowledge of the circumstances that rendered Reliance's actions in violation of ERISA. Iqbal, 556 U.S. at 678.

In any event, regardless of what Smalley, Smalley Jr., and Bensen actually understood about the Transaction, "a principal is generally charged with notice of facts that an agent knows

9

or has reason to know and that are material to her duties as an agent." Salyers v. Metropolitan Life Ins. Co., 871 F.3d 934, 939-40 (9th Cir. 2017) (citing Restatement (Third) of Agency § 5.03 (2006)); see also id. at 940 ("These agency principles, which we adopt into the federal common law, further Congress's goals under ERISA by preventing insurers from evading their obligation to pay benefits."). Accordingly, the knowledge of the Defendants' agents, including Chartwell and Defendants' transaction counsel, should be imputed to the Defendants under the Ninth Circuit's "should have known" standard and the notice standard Defendants' assert. For this additional reason, the Complaint alleges sufficient facts to state a claim against Smalley, Smalley Jr., and Bensen for breach of their fiduciary duty to monitor Reliance. However, to the extent the Court believes more specificity is required, the Secretary will respectfully seek leave to amend the Complaint.

        **C.    The Complaint Plausibly Alleges That Smalley, Smalley Jr., And Bensen Breached Their Co-Fiduciary Duties.**

Separate and apart from ERISA section 404's duty to monitor, ERISA section 405(a) makes a fiduciary "liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . (1) if he participates knowingly in . . . an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(1), (2) and (3). In effect, ERISA section 405(a) imposes on every ERISA fiduciary an "affirmative duty" to prevent other fiduciaries from breaching their duties. Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1157 (9th Cir. 2000). Smalley, Smalley Jr., and Bensen do not dispute that they are co-fiduciaries with Reliance for purposes of the Transaction. They argue, however, that the Secretary's claims for breach of co-fiduciary duty "fail for the same reasons" as the Secretary's duty to monitor claims. MTD at 10. As set forth in section B above, the Secretary has pleaded

sufficient facts to give rise to a "reasonable inference" that the Director Defendants had knowledge of Reliance's fiduciary breaches. Iqbal, 556 U.S. at 678.

### D. The Complaint Plausibly Alleges That Smalley, Smalley Jr., Bensen, And The Smalley Trusts Knowingly Participated In Reliance's Fiduciary Breaches.

Even if the Court were to find that Smalley, Smalley Jr., and Bensen did not breach their fiduciary duties, they, and the Smalley Trusts, are still liable for knowingly participating in Reliance's fiduciary breaches. Defendants acknowledge that "a non-fiduciary may be held liable under 29 U.S.C. § 1132(a)(3) for knowingly participating" in a fiduciary's breach. MTD at 11 (citing Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 246 (2000)). With respect to the knowledge requirement, the Supreme Court held in Harris Trust that the non-fiduciary must have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." 530 U.S. at 251. Like "notice," "constructive knowledge" is broader than "actual knowledge," and encompasses knowledge that a defendant should have had. Id. ("Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust. Translated to the instant context, the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful.") (emphasis added); Shenker v. Baltimore & O. R. Co., 374 U.S. 1, 13 (1963) ("In a meaningful sense, then, imposition of a duty to inspect is no more than a specific application of the concept of constructive knowledge, since it is implicit in the principle that one is chargeable with knowledge of that which in the exercise of reasonable care he should have known. Here, that would mean that in the exercise of reasonable care the B&O should have inspected the P E cars and is chargeable with knowledge of that which a reasonable inspection would have shown.") (emphasis added).

Defendants, again, argue that the Secretary has failed to allege any facts that would give rise to a plausible claim that Defendants had knowledge of any misconduct by Reliance, ever believed that Reliance had failed to fulfill its duties, or were even on notice of "any potential

misadventure by Reliance." MTD at 11. This characterization would lead one to believe that the Complaint contains only a single conclusory allegation that Defendants had knowledge of Reliance's fiduciary breaches. To the contrary, the Complaint specifically alleges that Defendants "knew that Reliance failed to hire an independent appraiser, rushed its investigation into the Transaction, failed to provide SRR with complete information, failed to adequately review and question SRR's valuation report, failed to negotiate in good faith, and caused the Plan to purchase RVR stock for more than fair market value." Compl. ¶ 81. Moreover, as more fully discussed above, the Complaint is replete with detailed factual allegations describing how Defendants and Chartwell, not only knew about, but designed the imprudent and disloyal process that Reliance engaged in to approve the Transaction on the Plan's behalf.

### E. The Secretary's Indemnification Claim Should Not Be Dismissed Because The Complaint States A Claim For Breach Of Fiduciary Duty Against Smalley, Smalley Jr., And Bensen Under Rule 8(a).

ERISA section 409(a) provides that a fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each . . . breach." 29 U.S.C. § 1109(a). ERISA section 410(a) further provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). A fiduciary is impermissibly relieved of responsibility or liability for its ERISA fiduciary duties when an ERISA plan itself bears some of the burden of indemnifying a fiduciary for its fiduciary breaches. 29 C.F.R. § 2509.75-4.

Section 12.6 of the Plan document provides that the Plan will reimburse the ESOP Committee for losses and legal costs arising from claims for breach of their ERISA fiduciary duties. Compl. ¶¶ 49-51. Because, on its face, section 12.6 purports to relieve Smalley, Smalley Jr., and Bensen of liability for their ERISA fiduciary duties, it is void ab initio pursuant to ERISA section 410(a). Section 12.14 of the Plan document provides for RVR's defense or indemnification of the Board, ESOP Committee, officers, and employees for claims arising out of their Plan-related responsibilities. Compl. ¶ 52. RVR's payment of losses and legal expenses

for Smalley, Smalley Jr., and Bensen would diminish the value of the Company, which in turn, would reduce the value of the Company's stock held by the Plan. Id. ¶ 55. To the extent Smalley, Smalley Jr., and Bensen are permitted to recover money from RVR pursuant to the Plan's indemnifications provisions, such payments would violate ERISA and render the indemnification provisions void under ERISA section 410(a). Id.; Johnson, 572 F.3d at 1080.

Defendants baldly assert that the Secretary's indemnification-related claim fails because it is "premature" and "speculative," but they do not cite any authority or explain the basis for this assertion. MTD at 12. As demonstrated above, the provisions violate ERISA section 410(a). Moreover, given that the same counsel is representing the Director Defendants and the Company in this proceeding, the possible direct monetary harm to the Plan is clear. In discovery, the Secretary will seek evidence as to whether RVR (a Rule 19 defendant in this litigation) has been paying any part of the Director Defendants' legal costs, which he will introduce in support of Count VII at the merits stage.

Defendants other argument for dismissal of the Secretary's indemnification-related claim rests on the premise that the Secretary has failed to plead viable claims for breach of fiduciary duty against the Director Defendants. MTD at 12. However, as set forth above, the Complaint plausibly alleges claims against Smalley, Smalley, Jr. and Bensen for violations of the duty to monitor and their co-fiduciary duties.

### F. RVR Should Not Be Dismissed From The Case.

Defendants argue that the Secretary has failed to meet his burden to demonstrate that RVR is a necessary party under Rule 19 because the Complaint purportedly does not allege facts demonstrating that complete relief cannot be ordered by the Court in the absence of RVR's joinder. MTD at 12. To the contrary, the Secretary has plead sufficient facts to show that joining RVR to the case is necessary for complete relief to be granted.

This case centers on ERISA fiduciary violations relating to a Plan that RVR created. RVR is the employer whose employees are covered by the Plan, as well as the Plan sponsor, Plan administrator, and signatory to contracts governing the Plan. Compl. ¶¶ 2, 18, 21, 25, 27. The

Company is, therefore, intimately involved in issues pertaining to the Plan, and any remedy that the Secretary seeks in this action will implicate the Company. For example, to prevent harm to the Plan, the Complaint specifically requests that the Court void the indemnification provisions in the Plan document and other transaction-related documents signed by the Company. Compl., Prayer for Relief ¶¶ 7-8. The Complaint also requests general injunctive relief that the Court may deem just and proper. Id. ¶ 9. To that end, the Secretary may seek to, among other things, restructure the Company's Board, which is currently comprised solely of Smalley, Smalley Jr. and Bensen (whom the Secretary alleges committed numerous ERISA fiduciary breaches) and does not include an independent representative of the Plan. Compl. ¶¶ 6, 48. Accordingly, the Company is a necessary party to ensure that the Secretary may obtain complete relief for parties harmed by ERISA violations, and to ensure that all parties are able to present their interests with respect to this action.

In the Webb case on which Defendants' rely so heavily in their Motion, the district court refused to dismiss a plan as a Rule 19 defendant because, similar to this case, the Secretary's "Prayers for Relief [were] likely to impact administration of the ESOP, particularly paragraph 3 which asks this Court to enjoin Defendants and all related parties from benefitting from any agreement that grants or purports to grant them indemnification from [the Company] or the Plan or to absolve them of liability for their fiduciary breaches." Webb, 931 F. Supp. 2d at 956 (quotation marks omitted); see also Acosta v. Pacific Enters., 950 F.2d 611, 618 (9th Cir. 1991) ("Thus, even though Acosta cannot sue the SoCal Gas Plan for breach of fiduciary duty per se, he may, as he has done here, join the Plan in his action for breach of fiduciary duty in order that he may obtain the relief sought."). Even more recently, the district court in Saakvitne refused to dismiss a company that was also the plan sponsor and plan administrator, on the grounds that "[t]he requested relief appears to require the [c]ompany's involvement, given the [c]ompany's role in administering the ESOP." 355 F. Supp. 3d at 918. The same result should ensue here.[6]

---

[6] Likewise, the Plan is a necessary and proper Rule 19 party to this lawsuit.

14

## IV. CONCLUSION

For the foregoing reasons, the Secretary's Complaint easily meets the Rule 8(a) pleading standard as set forth in Twombly and Iqbal. Further, RVR, Inc. has been properly joined as a Rule 19 defendant. Defendants' Rule 12(b)(6) Motion to Dismiss should, therefore, be denied. To the extent, however, that the Court believes more specific factual allegations are required to satisfy Rule 8(a), the Secretary will respectfully seek leave to amend his Complaint.

Dated: August 12, 2019

Respectfully Submitted,

KATE S. O'SCANNLAIN
Solicitor of Labor

G. WILLIAM SCOTT
Associate Solicitor
  for Plan Benefits Security

GLENN M. LOOS
Counsel for Litigation

/s/ Brendan Ballard
BRENDAN BALLARD
Trial Attorney

ERIC C. LUND
Senior Trial Attorney

U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
P.O. Box 1914
Washington, D.C. 20013
ballard.brendan@dol.gov
lund.eric@dol.gov
Direct: (202) 693-5600
Facsimile: (202) 693-5610
Attorneys for Plaintiff, Patrick Pizzella, Acting Secretary of Labor

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Acting Secretary's Opposition to Defendants' Motion to Dismiss (Doc. 22) was served in the above-captioned case on all counsel of record via the court's CM/ECF system and was served on the RVR Employee Stock Ownership Plan via U.S. mail at the address below:

ESOP Committee as Plan Administrator for the RVR Employee Stock Ownership Plan
c/o Randall Smalley, Chair of ESOP Committee
11 W. Hampton Ave.
Mesa, AZ 85210

/s/ Brendan Ballard
BRENDAN BALLARD
Trial Attorney