1   BRYAN CAVE LEIGHTON PAISNER LLP
    Gregory B. Iannelli (No. 026549) (gregory.iannelli@bclplaw.com)
2   Two North Central Avenue, Suite 2100
    Phoenix, Arizona 85004-4406
3   Telephone:  (602) 364-7000

4   BRYAN CAVE LEIGHTON PAISNER LLP
    W. Bard Brockman (Admitted *Pro Hac Vice*) (bard.brockman@bclplaw.com)
5   Robert M. Lewis, Jr. (Admitted *Pro Hac Vice*) (robert.lewis@bclplaw.com)
    1201 West Peachtree Street, N.W., 14th Floor
6   Atlanta, Georgia 30309
    Telephone:  (404) 572-6600
7
8   Attorneys for Defendant Reliance Trust Company

9                 **UNITED STATES DISTRICT COURT**

10                    **DISTRICT OF ARIZONA**

11  Martin J. Walsh, United States Secretary of          No. CV-19-03178-PHX-JJT
    Labor,
12
              Plaintiff,
13
         vs.                                              **DEFENDANTS' JOINT MOTION
14                                                        TO EXCLUDE EXPERT OPINIONS
    Reliance Trust Company, Eric Bensen, Randall          AND TESTIMONY OF
15  Smalley, Robert Smalley, Jr., Family Trust            CHARLES E. WERT AND
    Created Under The Smalley Revocable Trust             C. PAUL WAZZAN**
16  Dated July 8, 2004, Marital Trust Created Under
    The Smalley Revocable Trust Dated July 8, 2004,       **(ORAL ARGUMENT REQUESTED)**
17  Survivor's Trust Created Under The Smalley
    Revocable Trust Dated July 8, 2004, RVR, Inc.,
18  and RVR Employee Stock Ownership Plan,
19            Defendants.
20
21
22
23
24
25
26
27
28

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...................................................................................... iii

**INTRODUCTION** ...................................................................................................... 1

**RELEVANT LEGAL STANDARD** ........................................................................... 2

**LEGAL ARGUMENT AND ANALYSIS** ................................................................... 3

**I.    WERT'S OPINIONS SHOULD BE EXCLUDED** ........................................... 3

    **A.    Summary Of Wert's Opinions** ............................................................ 3

    **B.    Wert's Opinions Regarding Defendants' Compliance With ERISA's Standard Of Care Are Improper and Irrelevant, And Should Be Excluded** .......................................................................................... 4

    **C.    Wert's Opinions Are Unreliable Because He Failed To Review A Significant Amount Of The Evidentiary Record** .............................. 5

    **D.    Wert Is Not Qualified To Offer His Stock Valuation Opinions** .......... 7

    **E.    Wert's Opinions As To Defendants' Knowledge and Witness Credibility Are Improper And Unreliable** ........................................ 9

**II.   WAZZAN'S OPINIONS SHOULD BE EXCLUDED** .................................... 11

    **A.    Summary Of Wazzan's Opinions** ..................................................... 11

    **B.    Wazzan Is Not Qualified To Offer His Opinions** ............................. 12

    **C.    Wazzan's Opinions Are Not Reliable And Should Be Excluded** ...... 17

        **1.    Wazzan's Opinions Are Not Derived From, Governed By, Or Tested Against Any Professional Valuation Standards** .............. 17

        **2.    Wazzan's Approach For Determining Fair Market Value Is Flawed And Unreliable** ..................................................... 19

            **a.    Wazzan Did Not Prepare His Own Independent Appraisal** .................................................... 19

            **b.    Wazzan Did Not Consider Key Information In His Determination Of The Equity Value Of The RVR Stock** 21

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.      Wazzan's Opinion On "Lost Opportunity Costs" Is Predicated On Invalid Legal And Factual Assumptions Dictated By Plaintiff.................................................................23

**CONCLUSION**.................................................................................25

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

# TABLE OF AUTHORITIES

**Cases**

*Alsadi v. Intel Corp.*, 2019 WL 4849482 (D. Ariz. Sept. 30, 2019) ...............................8

*Arjangrad v. JPMorgan Chase Bank, N.A.*, No. 3:10-CV-01157-PK, 2012 WL 1890372 (D. Or. May 23, 2012) ...............................................................................................................4

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17-CV-205, 2020 WL 2553181 (S.D. Cal. May 20, 2020) ...................................................................................................10

*Braun v. O'Brien*, No. CV F 04-5474 LJO, 2006 WL 8458557 (E.D. Cal. Feb. 27, 2006) ..........4

*Clinton v. Mentor Worldwide LLC*, 2016 WL 7491861 (E.D. Mo. Dec. 30, 2016).....................10

*Crow Tribe of Indians v. Racicot*, 87 F.3d 1039 (9th Cir. 1996)...............................................4

*Daubert v. Merrell Dow Pharms., Inc.*, 526 U.S. 579 (1993) ...........................................passim

*Estate of Gillet v. C.I.R., T.C. Memo.* 1985-394, 50 T.C.M. (CCH) 636 (1985)....................11

*Glaukos Corp. v. Ivantis, Inc.*, No. SACV18620JVSJDEX, 2020 WL 10501851 (C.D. Cal. July 23, 2020) ........................................................................................................................10

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ..........................................1, 2, 19

*Nixon-Egli Equipment Co. v. John A. Alexander Co.*, 949 F. Supp. 1435 (C.D. Cal. 1996)....2

*Pegram v. Herdrich*, 530 U.S. 211 (2000) ...............................................................................5

*Powell v. Anheuser-Busch Inc.*, No. CV 09-729-JFW (VBKX), 2012 WL 12953439 (C.D. Cal. Sept. 24, 2012)...............................................................................................................7

*Sanchez v. Jiles*, No. CV1009384MMMOPX, 2012 WL 13005996 (C.D. Cal. June 14, 2012)...4

*Sheehan v. Daily Racing Form*, 104 F.3d 940 (7th Cir. 1997) ...............................................19

*Smith v. Pac. Bell Tel. Co.*, 649 F. Supp. 2d 1073 (E.D. Cal. 2009)........................................7

*Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134 (D. Colo. 2019)..............................................4

*U.S. v. Diaz*, 876 F.3d 1194 (9th Circ. 2017) ........................................................................4

*United States of Am. ex rel. Jordan v. Northrop Grumman Corp.*, No. CV95-2985 ABC (EX), 2003 WL 27366220 (C.D. Cal. Feb. 24, 2003)..........................................................4

*United States v. Malboa-Pena*, No. CR07-756-TUC-CKJ, 2007 WL 2903013 (D. Ariz. Oct. 3, 2007) ...............................................................................................................................2

*Walsh v. Bowers*, 18-0011555 SOM-WRP, 2021 WL 4240365 (D. Haw. Sept. 17, 2021) ..20, 22

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706 (8th Cir. 2001) ...............................................................................................................................7

**Statutes**

26 C.F.R. § 1.170A-17(a)(2) ....................................................................................................19

26 C.F.R. § 1.170A-17(b)(1)....................................................................................................19

26 U.S.C. § 401(a)(28)(C) .......................................................................................................18

29 U.S.C. § 1002(14)(A) ..........................................................................................................24

29 U.S.C. § 1002(21)(A)............................................................................................................5

29 U.S.C. § 1103(a) .................................................................................................................16

29 U.S.C. § 1106(a)(1)(B).........................................................................................................24

29 U.S.C. § 1107(d)(6) .............................................................................................................25

29 U.S.C. § 1108(e)..................................................................................................................24

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

**Other Authorities**

Prop. DOL Reg. § 2510.3-18, 53 Fed. Reg. 17637 (May 17, 1998) .......................................... 13

**Rules**

ERISA § 3(14)(A) ........................................................................................................................ 24

ERISA § 406(a)(1)(B) .................................................................................................................. 24

ERISA § 407(d)(6) ....................................................................................................................... 25

ERISA § 408(e) ............................................................................................................................ 24

Fed. R. Evid. 702 ........................................................................................................................... 1

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants jointly move to preclude the testimony and opinions of Plaintiff's identified expert witnesses under *Daubert v. Merrell Dow Pharms., Inc.*, 526 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and Fed. R. Evid. 702.

## INTRODUCTION

Plaintiff has identified two purported experts to support his claims against Defendants: (1) Charles E. Wert ("Wert"), a purported fiduciary process expert; and (2) C. Paul Wazzan, Ph.D. ("Wazzan"), a purported expert on the valuation of private company stock. Plaintiff bears the burden of establishing the qualifications of his experts, as well as the relevance and reliability of their opinions. *Id.* That is a burden Plaintiff has not met and cannot meet.[1]

Wert, who counts Plaintiff as one of his firm's top clients,[2] should be precluded from offering any testimony or opinions in this matter because: (1) his opinions as to whether Defendants complied with their legal duties under ERISA go to the ultimate issue in this case; (2) his opinions are unreliable because they are based on insufficient data and investigation; (3) he offers valuation opinions for which he is not qualified; and (4) he improperly opines on Defendants' knowledge, Defendants' state of mind, and witness credibility.

Wazzan, a purported stock valuation expert, also lacks the qualifications necessary to offer his valuation-related opinions, including his opinion on the fair market value of the

---

[1]   Wert's and Wazzan's various expert reports, along with excerpts from their respective depositions, are being submitted with a separate Appendix.  The Appendix also includes other relevant deposition excerpts, witness declarations, and other documents cited in this Motion.

[2]   Wert's firm has been engaged three times by the DOL, provides the DOL with a $150 per hour volume discount, and counts as one of its founders and owners a former DOL trial lawyer. (Wert Dep. at 14, 17, 19-20). As a result, it is hardly surprising that Wert's expert report reads like an advocate's legal brief.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1

stock acquired by the RVR, Inc. Employee Stock Ownership Trust (the "ESOP"). Indeed, prior to this litigation, Wazzan had **never** offered an opinion on the fair market value of private company stock purchased by an ESOP.  (Wazzan Dep. at 20).  In fact, Wazzan did not even attempt to conduct an independent appraisal of the RVR stock acquired by the ESOP. Instead, he cherry picked and manipulated select information from the valuation report by Reliance's financial advisor, Stout Risius Ross ("SRR") – the very valuation report that he criticizes as unreliable.  Wazzan's testimony and opinions should be excluded because (1) he lacks the qualifications to offer them; (2) his opinions fail to comply with any accepted valuation or appraisal standards; and (3) he failed to review (much less take into account) critical evidence.

## RELEVANT LEGAL STANDARD

On a *Daubert* motion, a trial court is required to determine whether (1) the witness is qualified to offer his proposed opinions, and (2) the witness's opinions are both relevant and reliable. *See, e.g., United States v. Malboa-Pena*, No. CR07-756-TUC-CKJ, 2007 WL 2903013, at *1 (D. Ariz. Oct. 3, 2007) (citing *Kumho*, 526 U.S. at 141, 152).  Here, neither Wert nor Wazzan are qualified to offer their opinions and Plaintiff has not established that either Wert's or Wazzan's opinions are relevant or reliable.  Accordingly, Defendants' Motion should be granted and the use of Wert's and Wazzan's opinions and testimony should be precluded, including at summary judgment. *See Nixon-Egli Equipment Co. v. John A. Alexander Co.*, 949 F. Supp. 1435, 1447 (C.D. Cal. 1996) ("As the Ninth Circuit has ... made clear, the *Daubert* standard can be invoked at the summary judgment stage as well as at trial or in motions *in limine*.").

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1

## **LEGAL ARGUMENT AND ANALYSIS**

2

### **I.      WERT'S OPINIONS SHOULD BE EXCLUDED**

3

### **A.      Summary Of Wert's Opinions**

4

Wert was "asked [by Plaintiff] to provide an opinion [as to] whether or not the parties

5

6

had fulfilled their fiduciary responsibilities" under ERISA. (Wert Dep. at 148).  The

7

"standard of care" used by Wert to measure Defendants' compliance with their ERISA

8

fiduciary duties is Wert's understanding of ERISA. (*See id.* at 117 (Wert's use of the phrase

9

"standard of care" throughout his reports is intended to refer to "the requirements of ERISA"

10

as he understands them); *id.* at 120 ("[T]he standard of care is the standard of care. It's

11

12

defined under ERISA."); Wert Rep. at 20 ("Under ERISA, a trustee acting on behalf of an

13

employee benefit plan (here an ESOP) is subject to a high standard of loyalty and care")).

14

Wert applied his understanding of ERISA to his interpretation of the facts to conclude

15

16

that none of the Defendants complied with ERISA's standard of care. *See, e.g.*, Wert Rep. at

17

19 ("Reliance did not meet the proper standard of care for ESOP trustees when purchasing

18

stock of the sponsoring company"); *id.* at 20 ("it is my conclusion that Reliance did not meet

19

the standard of care… I further conclude that the Director Defendants, as the fiduciaries

20

21

appointing the ESOP Trustee, did not adhere to their responsibility to monitor Reliance's

22

actions on behalf of the ESOP"); *id.* at 31 ("[t]o satisfy their duty to monitor Reliance,

23

Smalley, Smalley, Jr. and Bensen should have intervened to prevent Reliance from acting

24

contrary to the interests of the ESOP"); *id.* at 32 ("Reliance violated the standard of care it

25

26

owed to the ESOP when it approved the $105 million Transaction and all of the

27

accompanying terms and conditions"); *id.* at 33 (the Director Defendants "failed to meet the

28

standard of care required of them in connection with their duty to monitor Reliance").

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

**B.     Wert's Opinions Regarding Defendants' Compliance With ERISA's Standard Of Care Are Improper and Irrelevant, And Should Be Excluded**

Throughout his Reports, Wert opines as to both the requirements of ERISA and whether Defendants complied with those requirements.  (*See, supra*).  An expert cannot "offer testimony on issues of law, but must instead limit his testimony to interpretation and analysis of factual evidence."  *United States of Am. ex rel. Jordan v. Northrop Grumman Corp.*, No. CV95-2985 ABC (EX), 2003 WL 27366220, at *3 (C.D. Cal. Feb. 24, 2003) (quoting *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996)); *see also Sanchez v. Jiles*, No. CV1009384MMMOPX, 2012 WL 13005996, at *31 (C.D. Cal. June 14, 2012) (expert witnesses "may not testify to legal conclusions that are intertwined with the ultimate issue.").  The Ninth Circuit has "repeatedly affirmed" that an expert cannot offer "an opinion on an ultimate issue of law."  *U.S. v. Diaz*, 876 F.3d 1194, 1197 (9th Circ. 2017).  Further, though "experts may use legal terms in expressing their opinions, expert testimony that consists of legal conclusions is unhelpful and inadmissible."  *Arjangrad v. JPMorgan Chase Bank*, N.A., No. 3:10-CV-01157-PK, 2012 WL 1890372, at *7 (D. Or. May 23, 2012) (excluding expert testimony where the expert's opinion stated "ultimate legal conclusions, such as whether discrimination occurred.").  Thus, an "expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but *he may not testify as to whether the legal standard has been satisfied.*"  *Braun v. O'Brien*, No. CV F 04-5474 LJO, 2006 WL 8458557, at *4 (E.D. Cal. Feb. 27, 2006) (emphasis added); *Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134, 1142 (D. Colo. 2019) (holding where expert based his opinion that the Plan did not act as a prudent fiduciary on the standard of care as set forth in ERISA, his opinions were "impermissible legal conclusions and must be excluded.")  Wert's opinions violate this core principle of expert testimony.  His report is replete

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

with opinions that Defendants have violated the ERISA standard of care, which, of course, is the ultimate issue for the Court to determine in this case.  Wert's opinions are nothing more than impermissible legal conclusions as to the ultimate issue that should properly be excluded.

Moreover, given his lack of legal education and training, Wert's opinions as to the requirements of ERISA, as well as his purported application of ERISA to his understanding of the facts, are unreliable and inadmissible.  By way of example, Wert testified that his definition of "a fiduciary is that he's independent and free of conflicts."  (Wert Dep. at 213).  Of course, ERISA defines the term "fiduciary" and the definition does not require independence or freedom from conflicts. *See, e.g.*, 29 U.S.C. § 1002(21)(A).  Indeed, acceptance of Wert's "fiduciary" definition would eviscerate the "two-hats doctrine" recognized by the Supreme Court decades ago. *See, e.g., Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) (recognizing that a "trustee under ERISA may wear different hats" and "may have financial interests adverse to beneficiaries").  Wert's misunderstanding of ERISA's definition of a fiduciary undermines his opinions as to whether Defendants complied with their ERISA fiduciary duties

**C.      Wert's Opinions Are Unreliable Because He Failed To Review A Significant Amount Of The Evidentiary Record**

Wert's assignment was to examine and express an opinion on the conduct of both Reliance and the Director Defendants in connection with the ESOP transaction at issue in this case.  (Wert Rep. at 2).  Despite that broad charge, Wert's opinions as to Defendants' conduct are based on a shockingly limited review of the evidentiary record.  In selecting the information to review, Wert provided Plaintiff with broad categories of information, and Plaintiff then sent him documents and deposition testimony it believed were responsive.  (Wert Dep. at 162).  Notably, Wert admits that he did not request or review: (i) Reliance's entire document production; (ii) the entire document

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

productions of Reliance's advisors, SRR and K&L Gates; or (iii) the entire document productions of RVR or its financial advisor Chartwell.  (*Id.* at 168-172).  Each such production contained thousands of pages of documents relevant to an appropriate analysis of Defendants' conduct in the underlying transaction.

Worse, Wert admits that he did not even review the vast majority of the documents and deposition transcripts that were provided to him.  Instead, Wert relied on two of his colleagues to review approximately two-thirds of the documents and deposition transcripts and to make him aware of anything *they* thought were "highlights."[3]  (Wert Dep. at 90-91) (explaining that he personally only read a small portion of the relevant deposition testimony); *id.* at 91 (testifying that he "probably" read parts of most of the deposition transcripts)).  Despite his limited review of only a small fraction of the documents and deposition testimony produced in this case, all of which were spoon-fed to Wert by Plaintiff, Wert incredibly purports to opine on the totality of the Defendants' conduct in the underlying transaction.  Not surprisingly, given his extremely limited document review, Wert did not see much documentation on the part of Reliance that indicates that they performed enough due diligence, in my estimation." (Wert Dep. at 318).  Opinions based on insufficient facts, such as Wert's here, are unhelpful and inherently unreliable.

Wert similarly offers his interpretation of the Florida Business Corporations Act ("FBCA") and its requirements for directors of Florida corporations.  (Wert Rep. at 14-16; Wert Dep. at 144-148).  In offering that interpretation, however, Wert admittedly only took into account one aspect

---

[3]  Similarly, Wert could not affirm that he had reviewed Defendants' interrogatory responses, testifying that he was not sure who on his staff reviewed which interrogatory responses and only that he "may have" reviewed some of those responses.  (Wert Dep. at 94).

of the FBCA (the annual shareholder meeting mandate) because the remainder of the FBCA was "too voluminous" for him to read and consider.  (Wert Dep. at 145-146).

When an expert fails to adequately review the record or other pertinent materials, his opinions may be deemed unreliable and excluded.[4]  *See Smith v. Pac. Bell Tel. Co*., 649 F. Supp. 2d 1073, 1096-1097 (E.D. Cal. 2009) (refusing to admit testimony of an expert in part because the expert's report was "based on incomplete facts and selective documents."); *Powell v. Anheuser-Busch Inc*., No. CV 09-729-JFW (VBKX), 2012 WL 12953439, at *6-7 (C.D. Cal. Sept. 24, 2012) (excluding expert testimony where the expert "lack[ed] sufficient facts or data to make a reliable analysis" and "attempt[ed] to offer opinions without a full understanding or knowledge of the facts of this case.").  Wert's admitted failure to review key portions of the record undermines his (improper) opinions that the Defendants failed to meet ERISA's standard of care.

### D.    Wert Is Not Qualified To Offer His Stock Valuation Opinions

An expert may not offer opinions on matters for which he is not qualified.  *See, e.g., Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc*., 254 F.3d 706, 715 (8th Cir. 2001) (the court must "perform its gatekeeping role by ensuring the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable").  In this case, Wert offers a number of stock valuation opinions.  ***Wert, however, is***

---

[4]   Even when he did read portions of the record, Wert apparently misread or misunderstood what he read.  For example, Wert opined that "because SRR did not receive or review the Amended Bylaws, SRR was not aware that the director defendants preserved their blocking right."  (Wert Rep. at 12).  At his deposition, Wert was shown a document which established that SRR had, in fact, received the Amended Bylaws and that the Amended Bylaws did not include the so-called "blocking right."  (Wert Dep. at 200-201).  Rather than concede he erred in his assessment of Reliance's conduct, Wert doubled down and asserted the email was not a "smoking gun that --that would cause us to change our report."  (*Id*. at 201-202, 310-311).

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

***not a stock valuation expert.***  Indeed, during his deposition, Wert admitted that he: (1) does not hold (and has never held) any professional licenses or designations; (2) has never worked as a stock valuation expert or held himself out as a stock valuation expert; and (3) has never prepared a valuation of private company stock. (*See* Wert Dep. at 30-31).

Despite never having conducted a valuation of private company stock and not holding any valuation-related credential, degree, designation, or experience, Wert offers at least four valuation opinions in this case.  Those opinions, which play a critical role in his opinions as to whether Defendants satisfied ERISA's standard of care, should be excluded given Wert's lack of qualifications.  *See, e.g.*, *Alsadi v. Intel Corp.*, 2019 WL 4849482 (D. Ariz. Sept. 30, 2019) (expert's opinions excluded after plaintiff failed to show that the expert was qualified).

First, Wert opines that SRR, the independent financial advisor retained by Reliance to appraise the value of 100% of RVR's stock, improperly valued 100% of RVR's stock on a controlling-interest basis. (Wert Dep. at 33).  Wert concedes that he has never offered an opinion as to whether a controlling interest valuation methodology is appropriate outside of the litigation context and could not identify any specific occasion when he did so even in the litigation context.  (*Id.* at 34, 113-114).

Second, Wert opines that the ESOP never acquired "control in fact" over RVR despite the fact that the ESOP received 100% of RVR's stock. (Wert Dep. at 134, 312-313).  In support of his opinion, Wert cites to his own list of criteria which he states should be considered in "valuing stock for a transaction such as the one at issue here." (Wert Rep. at 23; *see also* Wert Dep. at 313-314).  Not only does Wert lack the legal and/or valuation expertise necessary to determine when "control" of a corporation is possessed by a shareholder, several of his criteria involve rights that traditionally belong to a board of directors and not to a shareholder.  (Wert Dep. at 314-317).

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Third, although he did not conduct a valuation of RVR's stock, Wert opines that (i) the $143.9 million purchase price set forth in RVR's initial proposal to Reliance was not an appropriate value; and (ii) Chartwell's estimated preliminary value range of $100.7 million to $143.9 million for 100% of RVR's stock was not justified. (*Id.* at 123-124). Of course, Wert has never represented a shareholder selling stock to an ESOP, has no experience preparing estimated valuation ranges, and has never himself valued private company stock without the assistance of a stock valuation expert. (*Id.* at 30-31, 143-144).

Finally, Wert opines that the number of warrants issued to the Smalleys in connection with the financing of the ESOP transaction was excessive. (*Id.* at 34). Wert offers this opinion despite having no recollection of ever being involved in any transaction in which warrants were issued as part of the financing. (*Id.* at 68-69). Indeed, Wert admits his opinion on this issue is based solely on an informal survey of a few friends who he refused to name, but also concedes that none are valuation experts. (*Id.* at 278-281).

**E.    Wert's Opinions As To Defendants' Knowledge and Witness Credibility Are Improper And Unreliable**

Throughout his Reports, Wert offers opinions as to Defendants' knowledge and state of mind. For example, Wert opines that the Director Defendants "***knew*** the $105 million purchase price included a control premium but resulted in the Director Defendants' retention of complete control" over RVR; the "Director Defendants ***knew*** that certain barriers to ESOP control, like the blocking right was not eliminated or meaningfully changed"; and "[t]he Director Defendants ***must have been aware*** of these changes because they reviewed and signed all the relevant documents." (Wert Rep. at 31) (emphasis added); *see also* Wert Rebuttal to Wilusz at 6 (opining that the Director Defendants "were knowledgeable individuals who understood the structure and terms of the ESOP transaction…[and]… they were clearly intent on retaining control of RVR"). Such

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

9

knowledge and state of mind opinions are improper and should be excluded.  *See, e.g., Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17-CV-205, 2020 WL 2553181, at *5 (S.D. Cal. May 20, 2020) (expert opinions "on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise"); *Glaukos Corp. v. Ivantis, Inc*., No. SACV18620JVSJDEX, 2020 WL 10501851, at *13 (C.D. Cal. July 23, 2020) (excluding expert from testifying regarding state of mind because any such opinion would invade the province of the factfinder); *Clinton v. Mentor Worldwide LLC*, 2016 WL 7491861, at *11 (E.D. Mo. Dec. 30, 2016) (proposed expert "cannot opine specifically on [a party's] knowledge, intent or state of mind as that is not the role of an expert witness").

Additionally, several of Wert's opinions are based upon improper witness credibility determinations.  For example, in support of his improper opinion that Reliance failed to comply with ERISA's standard of care, Wert claims that Reliance violated its own requirement that a quorum of Investment Policy Subcommittee members approve the proposed ESOP transaction. (Wert Rep. at 30).  However, Reliance's Rule 30(b)(6) witness, Chris Pitrof, however, testified that no such quorum requirement existed.  (Pitrof Dep. at 90-91).  Wert was aware of this testimony but claimed that it was "hard to imagine" that Pitrof was truthful.  (Wazzan Rep. at 30, n. 49).

Similarly, to support his opinion that the Director Defendants knew the ESOP paid more than fair market value for the RVR stock, Wert opines that the Director Defendants were well versed in the valuation of private company stock including the circumstances under which the application of a control premium to a valuation conclusion is (and is not) appropriate.  (*See, e.g*., Wert Rep. at 31).  Wert offered this opinion despite admitting that he read the Director Defendants' testimony in which they said they did not have any knowledge of private company stock valuation

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1   methodology and did not know when a controlling interest valuation methodology is or is not

2   proper.  (Wert Dep. at 109-110).

3   **II.     WAZZAN'S OPINIONS SHOULD BE EXCLUDED**

4          **A.      Summary Of Wazzan's Opinions**

6          Plaintiff asked Wazzan to provide an opinion as to (1) the fair market value of 100% of

7   RVR's stock as of May 28, 2014, and (2) the amount of damages allegedly suffered by the ESOP.

8   (Wazzan Rep. at 6).  In his report, Wazzan determined the fair market value of RVR's stock to be

9   $12.9 million, approximately 12% of the $105 million purchase price determined to be fair by

10  Reliance, RVR, and their respective advisors. (Wazzan Rep. at 32).  Wazzan admits that he did

11  not conduct any type of reality-check to determine whether his valuation conclusion was

12  reasonable.  (Wazzan Dep. at 91 ("Q. Did you do anything to -- to check the results against any

13  other data or sources? A. No."); *see also* Wazzan Dep. at 208-209, 211).  Had he done so, he

14  would have realized that his valuation was not reasonable as it is more than ***$85 million less than***

16  ***any other valuation (or estimate of value)*** of the RVR stock prepared in connection with the

17  ESOP Transaction.  It is also nearly $31.1 million ***less*** than the book value of RVR's assets as of

18  March 31, 2014, and almost $3 million less than the cash RVR had on hand at the time of the

20  Transaction.[5]  After reviewing criticisms of his work levied by Reliance's valuation expert,

24  _____

    [5]   Wazzan concedes that "book value" of a business is typically lower than fair market value
25  of the same business.  (Wazzan Dep. at 214).  Book value is often used as an estimate of the
    liquidation value of a company's assets, and it is one factor to be considered in the valuation
26  of closely-held company stock.  *See* IRS Revenue-Ruling 59-60.  Wazzan did not compare his
    concluded fair market value against RVR's book value.  (Wazzan Dep. at 211).  A conclusion
27  of value should be tested against other accepted valuation approaches, such as market price to
    book value.  *Estate of Gillet v. C.I.R., T.C. Memo*. 1985-394, 50 T.C.M. (CCH) 636 (1985).

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Wazzan even acknowledged his original opinion contained several errors and he ultimately changed his report to increase his valuation conclusion to $13.7 million.

As to his purported damages opinion, Wazzan claims that the "[t]otal damages due to overpayment are $91.3 million," which is the difference between his revised valuation opinion of $13.7 million and the purchase price of $105 million. (Wazzan Am. Rep. at 33). Wazzan then calculated the "lost opportunity costs on the [alleged] overpayment by the Plan for the Company's equity." (*Id.*). This "lost opportunity cost" calculation – based on a methodology that Plaintiff dictated -- improperly assumed that the Company loaned the Plan $105 million at the time of the ESOP Transaction and the Plan invested $91.3 million of that loan in an S&P 500 index fund. (*Id.* at 34). As a result of his inexperience with ESOPs and ERISA, Wazzan failed to realize that this $91.3 million loan and investment assumption is illegal under ERISA.

## B.    Wazzan Is Not Qualified To Offer His Opinions

Wazzan is a general damages expert who provides litigation support services through FTI Consulting ("FTI"). (Wazzan Dep. at 8-9). He is not a member of FTI's valuation practice, and he did not consult with any members of that practice in connection with this case. (*Id.* at 9, 47-48). While he has a Ph.D. in economics, Wazzan has no valuation or appraisal credentials. (*Id.* at 30). He is not a member of any professional organization for business appraisals; he is not an accredited senior appraiser; and his publications have little relevance to the valuation of private company stock. (*Id.* at 19, 30-31).

While Wazzan has provided expert testimony in a wide variety of disputes, including intellectual property, antitrust, and public policy cases, Wazzan has **no** experience in ERISA or ESOP cases. (Wazzan Am. Rep. at App'x "A"). He has never testified in an ERISA or ESOP case; none of his 74 prior expert engagements involved transactions in which an ESOP

12

purchased private company stock; and none of his prior engagements were cases that involved claims or allegations under ERISA. (*Id.* at 19-21, 32-33). Wazzan has never been engaged by an ESOP trustee to determine the fair market value of private company stock, has never provided a fairness opinion in connection with a transaction in which an ESOP has either purchased or sold private company stock, and has never conducted a valuation that involved the scope or powers of an ERISA-governed directed trustee. (*Id.* at 6-7, 34, 138). Wazzan is not a member of any ESOP-related professional organizations, and he has never written on ESOPs or other ERISA-related topics. (*Id*. at 19, 31; Wazzan Amended Report at App'x "A").

Wazzan is not sufficiently knowledgeable about ERISA or ESOPs to be qualified to offer any valuation-related opinions of private company stock acquired by an ESOP. One of the key elements in valuing private company stock acquired by an ESOP is understanding the standard for valuation in these types of cases: *i.e.*, fair market value. While ERISA does not define "fair market value," the DOL issued a proposed regulation defining fair market value as "the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for that asset." *See* Prop. DOL Reg. § 2510.3-18, 53 Fed. Reg. 17637 (May 17, 1998). The DOL's proposed regulation, based on IRS Revenue Ruling 59-60 and relevant case law, includes several factors an appraiser should consider in appraising the fair market value of private company stock. When asked if he was familiar with the Proposed Regulation, Wazzan said, "I just don't recall if I've seen this before." (Wazzan Dep. at 52).

Wazzan's lack of relevant appraisal and valuation qualifications manifested itself in several methodology errors in his report, which he admittedly corrected in response to

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

criticisms from Reliance's valuation expert, Jeffrey Tarbell. (*Id*. at 37, 42).  On November 12, 2021 – two months after issuing his original expert report – Wazzan submitted an "errata" to his expert report and detailed two substantive changes to his method for calculating the fair market value of the RVR stock at the time of the 2014 transaction.  (Wazzan 11/12/21 Errata to Report).  The first of these substantive revisions involved a key change to the formula for calculating equity value.  That formula includes the application of valuation discounts, if any are appropriate, to be applied to equity value.  Generally accepted valuation principles require that discounts are distinct and are to be applied *in sequence*.  In violation of that principle, Wazzan separately applied the two discounts – one for "lack of control" and one for "lack of marketability" – against the same equity figure, instead of applying those discounts in sequence.[6]  The second substantive revision involved a change to Wazzan's calculation of the terminal value, which is a key component of the Discounted Cash Flow ("DCF") valuation method – the only method that Wazzan utilized in his report. The DCF method estimates value based on a company's expected future cash flows by calculating two components: (i) the present value of the company's future cash flows through a projection period – in this case, through a five-year projection period; and (ii) the terminal value, which is the present value of the company's projected cash flows *indefinitely beyond* the projection period.  When calculating the terminal value under the Gordon Growth method (which Wazzan used), appraisers should discount to present value from a mid-year point.  Wazzan violated this

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

---

[6]   Defendants contend that a discount for lack of control is not appropriate under any circumstances in this case, and that Wazzan has overstated the discount for lack of marketability.  The Court need not address those issues, however, to determine that Wazzan is unqualified to offer his valuation opinions in this case.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

principle, and applied his discount from the end of the last year in the projection period. Wazzan corrected this second mistake in his November 12, 2021 errata. Considered together, Wazzan's two methodological corrections triggered ***thirty separate changes*** to his expert report. (Wazzan 11/12/21 Errata to Report; Wazzan Revised Exhibits (11/12/21); Wazzan Dep. at 40). Given the large number of substantive changes to his report, Wazzan felt compelled to untimely issue an entirely new (amended) report. (Wazzan Am. Rep.).

Then, on December 10, 2021 – roughly three months after issuing his original expert report, and less than one week prior to his deposition – Wazzan issued a ***second*** errata, this time making substantive changes to his Amended Report. (Wazzan 12/10/21 Errata to Am. Rep.). Once again, Wazzan conceded that his second set of errata changes were made in response to specific criticisms from Jeffrey Tarbell, Reliance's valuation expert. (Wazzan Dep. at 37-39). This latest set of substantive revisions dealt with the application of a control premium in calculating the equity of RVR stock. In the 2014 transaction at issue, Reliance's financial advisor, SRR, applied a 10% control premium in one of the two valuation methodologies it utilized. In both his original and amended report, Wazzan removed SRR's 10% control premium which, by itself, was the equivalent of applying a discount for lack of control. But Wazzan went further, and also applied a separate 17% discount for lack of control. (Wazzan Am. Rep. at 26). This effectively amounted to double-counting of the discount. Wazzan corrected this fundamental methodological error in his second errata sheet by backing out his prior removal of the SRR 10% control premium. This resulted in changes to four different paragraphs in his amended report and the replacement of two supporting exhibits. (Wazzan 12/10/21 Errata to Am. Rep.).

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Wazzan's lack of relevant appraisal and valuation credentials are not the only reason he is unqualified to offer expert opinions in this case.  Wazzan also lacks a basic understanding of an ESOP fiduciary's duties.  Such an understanding is necessary in this case.  ERISA's fiduciary provisions are ingrained in nearly every aspect of this case, including the control issues that are relevant to the valuation of the RVR stock. When asked about an ESOP fiduciary's duties, Wazzan testified:

> Well, in a very – a very general sense, I guess I would expect the fiduciary to take actions that benefit the plan participants. *I'm not sure I have a much deeper understanding than that.*

(Wazzan Dep. at 103) (emphasis added). When asked about the source of his understanding, he responded, "Well, it's my, you know, general concept of trustee." (*Id.*).  Wazzan did not have any prior understanding of the concept of a "directed trustee" under ERISA, and he had to ask his staff to research that definition.  (*Id.* at 139.)  He later cited to 29 U.S.C. § 1103(a) in his report for the proposition that a directed trustee is subject to the direction of a named fiduciary.  (Wazzan Amended Report p. 25, ¶ 64).  But he admittedly failed to consider that directed trustees are required to disregard any directions they deem improper, inconsistent with the Plan's terms, or contrary to ERISA. (Wazzan Dep. at 127-128, 131).

Wazzan's lack of valuation and appraisal credentials, by itself, is a sufficient basis to exclude his testimony.  His lack of experience in, and understanding of, the specialized arena of valuation for ESOP companies, including the interplay between the role of the directed trustee and the corresponding control issues, compels that he be excluded from offering expert opinions for lack of qualifications.

C.      **Wazzan's Opinions Are Not Reliable And Should Be Excluded**

Wazzan's opinions as to the value of RVR stock as of the May 28, 2014 Transaction date and as to the ESOP's alleged "damages" are inherently unreliable and should be excluded. His opinions as to value are not based on or derived from any professional valuation standards. Further, Wazzan's approach for determining the fair market value of the RVR stock is flawed. Rather than prepare his own independent appraisal, Wazzan selectively borrowed components from the appraisal prepared by Reliance's independent financial advisor and rejected others from the same appraisal.  Wazzan's short-cut approach to valuation not only falls short of the intellectual rigor required by *Daubert*, it is also internally inconsistent as some of Wazzan's borrowed components are based on data that he rejects elsewhere in his report.  Wazzan's approach is further unreliable because it is based on a selective review of relevant materials that Plaintiff hand-picked for him.  Finally, Wazzan's opinion as to "damages" is unreliable as it is based on a series of unfounded factual and legal assumptions Plaintiff instructed Wazzan to make.

1.  **Wazzan's Opinions Are Not Derived From, Governed By, Or Tested Against Any Professional Valuation Standards**

Wazzan purports to determine the fair market value of the RVR stock as of the May 28, 2014 ESOP Transaction date, yet his opinions are not predicated on any recognized valuation or appraisal standards.  Wazzan admits that he did not follow or incorporate any recognized valuation or appraisal standards in his expert reports:

Q:    Your amended report doesn't state it's prepared in accordance with any particular set of valuation standards, does it?

A:    No, it doesn't.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

(Wazzan Dep. at 57).  Given his lack of appraisal and valuation credentials, it is not surprising that Wazzan further admitted that he has only a "vague sense" of professional valuation standards.  (*Id*. at 56).  He could not name any such standards, however, and instead testified that ***his standards*** likely encompassed other (unidentified) sets of professional standards.

> Q:   Which sets of – which professional valuation standards are you familiar with?
> A:   Well, you read me a long list of – for the associations earlier on in the deposition.  I think they all vaguely have, you known, certain standards that the claim to adhere to.  Again, I'm an economist.  I'm not a CPA.  And ***my standards*** are – you know, I think encompass any other standard you could point to.

(*Id*. at 56-57) (emphasis added).[7]

Wazzan's admission is telling.  Not only are his opinions not grounded in any recognized professional standards, they are shaped entirely by what he describes as ***his standards***.  Wazzan's standards are a complete unknown, of course, and there is no way to test those standards against other accepted professional valuation standards, let alone test his conclusions against his own standards.  There are also no learned treatises or publications supporting Wazzan's "standards".  Wazzan's failure to rely on and follow generally accepted valuation and appraisal standards renders his opinions inherently unreliable.[8]

---

[7]  Wazzan had not previously been asked at his deposition about any associations that issue, promulgate or publish professional valuation or appraisal standards.  Rather, he had been asked if he was a member of any professional organizations related to ESOPs, like The ESOP Association or the National Center for Employee Ownership.  (*See* Wazzan Dep. at 31).  Neither of those professional organizations promulgate or publish valuation or appraisal standards.

[8]  Pertinent regulations applicable to already-formed ESOPs invoke compliance with generally accepted appraisal standards in the context of annual valuations.  ESOPs that invest in employer securities that are not readily tradeable on an established securities exchange – like the RVR ESOP here – must have an annual valuation of the company stock by a qualified independent appraiser.  26 U.S.C. § 401(a)(28)(C).  The regulations define an independent

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

### 2.  Wazzan's Approach For Determining Fair Market Value Is Flawed And Unreliable

#### a.  Wazzan Did Not Prepare His Own Independent Appraisal

Wazzan purports to determine the fair market value of the RVR stock through a valuation of that stock as of the May 28, 2014 Transaction date.  But Wazzan did not conduct his own independent valuation.  *Daubert* requires that the court assure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152; *Sheehan v. Daily Racing Form*, 104 F.3d 940, 942 (7th Cir. 1997) (assessing whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting").

Wazzan's opinions fail this test of intellectual rigor.  Rather than completing his own valuation from the ground-up, he piggy-backed on the May 2014 valuation conducted by Reliance's financial advisor, SRR, appropriating some components of SRR's valuation and overriding or ignoring others.  Remarkably, Wazzan admits that he adopted SRR's conclusions, facts and figures wherever he could.  (Wazzan Dep. at 58).  Wazzan's fair market value determination was based on only one valuation methodology – the DCF Method, which estimates value based on the company's projected cash flows.  Key components of the DCF model include, among other things, the projected revenue figures, the projected expense and net income forecasts, and a discount rate commonly referred to as the Weighted Average Cost of Capital ("WACC"), which is used to convert future net cash flows to present value.  For

appraiser as "an individual with verifiable education and experience in valuing the type of property for which the appraisal is performed[.]"  26 C.F.R. § 1.170A-17(b)(1).  A qualified appraisal is one that is prepared by a qualified appraiser in accordance with **"generally accepted standards**."  26 C.F.R. § 1.170A-17(a)(2) (emphasis added).

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

each of these important components, Wazzan simply adopted SRR's findings and inputs, rather than making an independent assessment.[9]   (*Id.* at 222 (adopting SRR's WACC calculation); Wazzan Amended Report at 18 (adopting SRR's revenue figures); Wazzan Am. Rep. at 19 (adopting SRR's expense and revenue forecasts)).

Wazzan's approach is further unreliable because it is internally inconsistent.  In at least two instances, Wazzan adopts key SRR inputs that are based on data that Wazzan has ***rejected*** elsewhere in his report.  By way of background, SRR's May 2014 valuation was based on two valuation methods – the DCF method, and the Guideline Company method.[10]   The Guideline Company method estimates value by deriving key multiples from reasonably similar publicly-traded companies and applying them to the company being valued.  Here, Wazzan rejected the Guideline Company method because, in his opinion, there were no publicly-traded companies that were sufficiently comparable to RVR. (Wazzan Am. Rep. at 10, ¶ 27; Wazzan Dep. at 182-184).  Despite concluding there were no comparable publicly-traded companies, Wazzan adopted two components of SRR's valuation that were derived from the very set of guideline

---

[9]   SRR itself had adopted RVR's projected revenue figures, and had also adopted RVR's projected expense and net income forecasts (with some adjustments).  But SRR had the benefit of interviewing RVR's chief financial officer, Eric Bensen, to assess the accuracy and reliability of RVR's projections, including any adjustments that may be needed for SRR's appraisal.  Wazzan did not interview company management; nor did he review Mr. Bensen's deposition testimony. *See infra* at p. 22-23.  The failure to interview RVR's management, or at least review their testimony, is an essential component of an appraiser's valuation responsibilities and process. *See, e.g.*, *Walsh v. Bowers*, 18-0011555 SOM-WRP, 2021 WL 4240365 at *13 (D. Haw. Sept. 17, 2021).

[10]   These valuation methods can be analogized to real estate appraisals.  The Guideline Company method values a company's stock similar to the way a real estate appraiser may look at recent sales of comparable homes to value a subject home.  The DCF approach, on the other hand, would be similar to valuing a home by estimating the monthly rental income the home may generate if rented to other families.

companies that Wazzan had rejected.  The first was a component of the WACC, commonly referred to as the "equity beta," which is a measurement of a security's volatility compared to the volatility of the market.  SRR's equity beta was based on data from its set of publicly-traded guideline companies.  Wazzan adopted SRR's equity beta as his own despite having rejected the same set of guideline companies as being unreliable.  (Wazzan Dep. at 69-70).  Wazzan also borrowed a separate volatility figure – this time from SRR's May 31, 2015 annual valuation – in his calculation of the value of the warrants.  Again, SRR's volatility figure was derived from the guideline companies that Wazzan expressly rejected.  (Wazzan Dep. at 176-177).  Wazzan's selective use of guideline company data for some purposes juxtaposed with his outright rejection of that same data makes his value conclusions unreliable.

### b.  Wazzan Did Not Consider Key Information In His Determination Of The Equity Value Of The RVR Stock

Wazzan's approach for determining the fair market value of the RVR stock as of May 28, 2014 was cursory and non-systematic, and he had little insight about the company he was purporting to value, further demonstrating the lack of intellectual rigor required by *Daubert*.  Wazzan did not select the documents that formed his opinion about value.  Instead, his review was limited to those materials that Plaintiff selected for him.  Wazzan explained:

> Q:   How was it decided that you would receive documents, if you know?
> A:   I had a discussion with the DOL, and asked them for, you know, any materials that had bearing on financial issues, business plans, pro formas, projections, things of that nature, you know, the legal pleadings.  You know, I think we sort of came to – that's it.

(Wazzan Dep at 28-29).  As a consequence, Wazzan reviewed only 138 documents selected by Plaintiff (*see* Wazzan Am. Rep. at Ex. B), instead of the several thousands of pages of material that RVR made available to Reliance and SRR as part of the 2014 transaction.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1    Wazzan's review of relevant deposition testimony was likewise cursory and haphazard.

2    Once again, Wazzan relied on Plaintiff to send him deposition transcripts.

3    Q:    How was it decided that the four depositions you've listed would be
4          provided to you, if you know?
      A:    I don't recall exactly.
5    Q:    Did you ask to receive particular depositions?
      A:    Not as I recall.  I think it was more of a generic request.
6    Q:    Do you remember the nature of your generic request?
7    A:    Send me the depositions that are relevant to valuation.

8    (Wazzan Dep. at 29).  In formulating his opinions, Wazzan reviewed only four depositions,

9    and three of those were of SRR representatives.  (Wazzan Am. Rep. at Ex. B).  Notably, he

10   did not review the deposition of RVR's chief financial officer, Eric Bensen, who was

11   responsible for the Company's financials and projections.  Nor did he review the deposition

12   of RVR's former president and chief operations officer, Robert Smalley, Jr, who was

13
14   responsible for the day-to-management of the company.

15       Wazzan also did not interview RVR's management, or ask to do so, in formulating his

16   opinions.  (Wazzan Dep. at 49).  In this regard, the recent decision in *Walsh v. Bowers*, 2021

17
18   WL 4240365, is instructive.  *Bowers* involved very similar DOL claims that the ESOP in that

19   case had paid more than fair market value for the company's stock.  In a lengthy and detailed

20   decision, the court noted that the DOL's valuation expert had failed to abide by the Uniform

21   Standards of Professional Appraisal Practice ("USPAP"), which require interviews with

22
23   company management in order for the appraiser to understand the asset being valued.  *Id*. at

24   *13.  Recognizing that the litigation context can pose practical challenges to interviews, the

25   court noted that the DOL's expert in that case also failed to obtain the necessary information

26
27   through discovery.  *Id.*  The same is true here.  Wazzan might be excused for not personally

28   interviewing RVR's management as required by USPAP (even though he never asked to do

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

22

1    so), but not for his failure to obtain the same type of information from RVR's key management

2    in the course of discovery.  This too renders his opinions as to value inherently unreliable.

### 3. Wazzan's Opinion On "Lost Opportunity Costs" Is Predicated On Invalid Legal And Factual Assumptions Dictated By Plaintiff

Plaintiff asked Wazzan to calculate the damages allegedly suffered by the ESOP due to the "overpayment" for RVR's equity, including lost earnings.  (Wazzan Dep. at 8).  As to lost earnings, Plaintiff directed Wazzan to make a series of disconcerting and unrealistic assumptions: (i) the ESOP would still have been formed and the Selling Shareholders would still have sold their RVR stock to the ESOP for $13.7 million; (ii) the loan of almost $105 million used to finance the ESOP's purchase of RVR's stock would still have been made *in the same amount*; and (iii) the ESOP would have had the option to invest the excess loan proceeds in something other than RVR stock.  (*Id*. at 45).  Based on these directed assumptions, Wazzan calculated "lost opportunity costs" as if the ESOP invested $91.3 million – the difference between the assumed loan of $105 million and the assumed purchase price of $13.7 million – in an S&P Index fund.  (Wazzan Am. Rep. at 33, ¶ 86).  Wazzan's "lost opportunity" construct is inherently faulty, unreliable, and illegal on several levels.

First, there is no basis to assume that the Selling Shareholders would have sold their RVR stock to the ESOP for only $13.7 million.  That is roughly $31.1 million less than the book value of RVR's assets, and almost $3 million less than the cash that RVR had on hand at the time of the May 2014 transaction.  (Wazzan Am. Rep. at 23, ¶ 58; Wazzan Dep. at 211-213).  Each of the selling shareholders testifies that they would never have sold their respective shares in RVR for a total purchase price of $13.7 million.  (Randall Smalley Dec. ¶ 43; Robert Smalley, Jr. Dec. ¶ 40; Eric Bensen Dec. ¶ 40).  In fact, they each testify that if faced with the

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1  choice of accepting $13.7 million for their RVR shares or keeping their shares, they would

2  have kept their shares and taken a distribution of the Company's cash on hand ($16 million)

3  as a dividend.  They then would have received more than the assumed purchase price of $13.7

4  million while still retaining 100% ownership of the Company.  (*Id*.)

5      Next, there is no basis to assume that Selling Shareholders, RVR, Wells Fargo, or

6  anyone else would have been able and willing to loan the ESOP almost $105 million had the

7  RVR stock been purchased for only $13.7 million.  Smalley, Jr. and Smalley's family trusts,

8  who collectively  took back subordinated promissory notes of more than $95 million from the

9  Company and guaranteed $30 million of the Wells Fargo revolving line of credit to help

10  finance the May 2014 transaction, both affirmatively testify that they (and the family trusts)

11  would not have been willing or able to loan $95 million to RVR  or the ESOP, if the RVR

12  stock was purchased for a total of $13.7 million.  (Smalley Dec. ¶ 44; Smalley, Jr. Dec. ¶ 41).

13  Moreover, any such loan[11] would be a prohibited transaction under ERISA § 406(a)(1)(B),

14  which prohibits the "lending of money or other extension of credit between the plan and a

15  party in interest."[12]  29 U.S.C. § 1106(a)(1)(B).  By contrast, the loan RVR made to the ESOP

16  in 2014 was not a prohibited transaction because it was entirely for the acquisition of

17  qualifying  employer  securities – i.e., company stock.  See ERISA § 408(e), 29 U.S.C.

18  § 1108(e).

---

[11]  Although he was directed by Plaintiff to assume that a $105 million loan would be made to the ESOP, Wazzan himself was not sure which party would actually make such a loan. (Wazzan Dep. at  200).

[12]  The Smalleys and RVR were each "parties in interest" by virtue of being the plan sponsor or directors of the plan sponsor at the time of the transaction. *See* ERISA § 3(14)(A), (H), 29 U.S.C. § 1002(14)(A), (H).

Finally, despite Plaintiff's instruction to the contrary, there is no basis to assume that the ESOP could have ever invested the vast majority of its assets in an S&P Index Fund. ESOPs, by definition, are required to invest primarily *in company stock*. *See* ERISA § 407(d)(6); 29 U.S.C. § 1107(d)(6). The Plan Document for the RVR ESOP has a similar requirement. (*See* Dep. Ex. 155 at § 9.2 ("[t]he Trustee will implement an investment program designed to invest primarily in Employer Securities . . . .")).

Wazzan's "lost opportunity costs" construct, which represents well over 50% of his total damages calculation, is based on invalid legal and factual assumptions, and it renders that portion of his opinion completely unreliable. Furthermore, Wazzan's "lost opportunity costs" calculation is unreliable because it fails to consider the *actual* performance of the RVR stock. Between May 31, 2014 (the first annual valuation following the ESOP's acquisition of the RVR stock on May 28, 2014) and its most recent annual valuation on May 31, 2021, the total equity value of the RVR stock held by the ESOP increased from $8.3 million to $121.8 million, which equates to a compound annual rate of return of 46.8% -- far outpacing the S&P 500 for the same period. (Wilusz Expert Report pp. 28-30).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court exclude the testimony and opinions of Plaintiff's experts at trial, summary judgment and any other proceeding before the Court.

This 25th day of March, 2022.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

25

HOLLAND & KNIGHT LLP

*/s/ Lindsey R. Camp*
777 South Flagler Drive
West Palm Beach, Florida 33401

Todd D. Wozniak
HOLLAND & KNIGHT LLP
1180 W Peachtree Street, NW
Suite 1800
Atlanta, Georgia  30309

Adrianna Gorton
GREENBERG TRAURIG, LLP
2375 East Camelback Road, Suite 800
Phoenix, Arizona  85016

*Attorneys for Defendants Eric Bensen, Randall Smalley; Robert Smalley, Jr.; Family Trust Created Under The Smalley Revocable Trust Dated July 8, 2004; Marital Trust Created Under The Smalley Revocable Trust Dated July 8, 2004; and Survivor's Trust Created Under The Smalley Revocable Trust Dated July 8, 2004; RVR, Inc.*

BRYAN CAVE LEIGHTON PAISNER LLP

*s/ W. Bard Brockman*
W. Bard Brockman
(Admitted *Pro Hac Vice*)
Robert M. Lewis, Jr.
(Admitted *Pro Hac Vice*)
1201 West Peachtree Street, NW, 14th Floor
Atlanta, Georgia  30309

Gregory B. Iannelli (No. 026549)
BRYAN CAVE LEIGHTON PAISNER LLP
Two North Two North Central Avenue
Suite 2100
Phoenix, Arizona 85004-4406

*Attorneys for Defendant Reliance Trust Company*

COPIES of the foregoing sent by e-mail transmission this 25th day of March 2022 to:

Eric Carl Lund
G. Brendan Ballard
Isidro Mariscal
Katrina Liu
Peter B. Dolan
U.S. DEPARTMENT OF LABOR
200 Constitution Avenue, NW
Room N-4611
Washington, D.C. 20210

Attorneys for Plaintiff

Lindsey R. Camp
HOLLAND & KNIGHT LLP
777 S Flagler Dr.
West Palm Beach, Florida 33401

Todd D. Wozniak
HOLLAND & KNIGHT LLP
1180 W Peachtree St., NW Suite 1800
Atlanta, Georgia 30309

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Adrianna Gorton
GREENBERG TRAURIG, LLP
2375 East Camelback Road, Suite 800
Phoenix, Arizona 85016

Attorneys for Defendants Eric Bensen,
Randall Smalley; Robert Smalley, Jr.;
Family Trust Created Under The Smalley
Revocable Trust Dated July 8, 2004;
Marital Trust Created Under The Smalley
Revocable Trust Dated July 8, 2004; and
Survivor's Trust Created Under The
Smalley Revocable Trust Dated July 8,
2004; RVR, Inc.

 /s/ W. Bard Brockman

605035288.5

**Bryan Cave Leighton Paisner LLP**
**Two North Central Avenue, Suite 2100**
**Phoenix, Arizona 85004-4406**
**(602) 364-7000**