Adrianna Griego Gorton, SBN 031836
gortona@gtlaw.com
Greenberg Traurig, LLP
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8000
Facsimile: (602) 445-8100

Todd D. Wozniak (*pro hac vice*)
Todd.Wozniak@hklaw.com
Holland & Knight, LLP
1180 W. Peachtree Street, N.W., Suite 1800
Atlanta, GA 30309
Telephone: (404) 817-8431
Facsimile: (404) 881-0470

Lindsey R. Camp (*pro hac vice*)
Lindsey.Camp@hklaw.com
Holland & Knight LLP
777 South Flagler Drive, Suite 1900
West Palm Beach, Florida 33401
Telephone: (404) 817-8439
Facsimile: (561) 650-8399

*Attorneys for Defendants Eric Bensen, Randall Smalley,
Robert Smalley, Jr., Family Trust Created Under The
Smalley Revocable Trust Dated July 8, 2004, Marital Trust
Created Under The Smalley Revocable Trust Dated July 8,
2004, Survivor's Trust Created Under The Smalley
Revocable Trust Dated July 8, 2004, and RVR, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin J. Walsh, Secretary of Labor,<br><br>Plaintiff,<br><br>v.<br><br>Reliance Trust Company, et al.,<br><br>Defendants. | Case No. 2:19-cv-03178-JJT<br><br>**THE RVR DEFENDANTS' AND SELLING SHAREHOLDERS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendants Eric Bensen, Randall Smalley, Robert Smalley, Jr., the Family Trust, Marital Trust and Survivor's Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, and RVR, Inc. submit this statement of facts in support of their motion for summary judgement:

1.      Immediately prior to the sale of 100% of RVR's stock to the RVR Employee Stock Ownership Trust ("Trust") on May 28, 2014, the shareholders of RVR's stock were Robert Smalley, Jr., Eric Bensen, the Family Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, the Marital Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, and the Survivor's Trust Created Under The Smalley Revocable Trust Dated July 8, 2004.  (Stock Purchase Agreement at 1; Smalley Decl. ¶ 4, 10; Smalley Dep. at 32-33).  Randall Smalley is the trustee of the three revocable trusts.[1]  (Smalley Dep. at 32-33; Smalley Decl. ¶¶ 4, 10).

2.      From 2011 until May 28, 2014, Robert Smalley, Jr. and Randall Smalley (the "Smalleys") were the only two members of RVR's Board of Directors ("Board").  (Smalley Decl. ¶¶ 4-5; Bensen Decl. ¶ 2).  Bensen joined as the third member of the RVR Board on May 28, 2014.  (*Id*.).

3.      Bensen and the Smalleys (the "RVR Defendants") met in-person on January 27, 2014 with Greg Fresh and Ted Margarit from Chartwell and Jim Griffin of Wells Fargo Advisors.  (Bensen Decl. ¶ 3; Smalley Decl. ¶ 6).

4.      During this January 27, 2014 meeting, Chartwell discussed some of the benefits of employee stock ownership plans ("ESOPs"), including succession planning, tax incentives, and providing an additional retirement benefit for employees.  (Bensen Decl. ¶ 4; Smalley, Jr. Decl. ¶ 6; Fresh Decl. ¶ 4).

5.      Based on preliminary information provided to Chartwell and with the assumption of a sale of 100% of RVR's stock to an ESOP, Chartwell advised the RVR Defendants that a preliminary fair market value range for 100% percent of RVR's stock

---

[1]      The shareholders will be referred to as the "Selling Shareholders" throughout this submission.

as of December 31, 2013 was between $100.7 million and $143.9 million.  (Fresh Dep. at 56, 180-82; Bensen Dep. at 80-81, 136; Smalley Dep. at 93-94, 101; Smalley, Jr. Dep. at 53-54, 76-77, 80,166; Margarit Dep. at 120; Chartwell 1/27/14 and 4/21 Presentations; Bensen Decl. ¶ 5; Smalley, Jr. Decl. ¶ 6; Smalley Decl. ¶ 8; Fresh Decl. ¶ 6).

6.     Chartwell explained to the RVR Defendants that its preliminary estimate of the fair market value range for 100% of RVR's stock was done on a controlling interest basis because of the assumption that more than 50% of the RVR stock would be sold to the ESOP.  (Fresh Decl. ¶ 6; Chartwell 1/27/14 Presentation).

7.     For illustrative purposes only, Chartwell used the low end of the preliminary range, $100.7 million, to analyze how much the Selling Shareholders might expect to receive under various scenarios and how a potential transaction might be financed and structured assuming a deal was struck at the low end of the estimated fair market value range.  (Bensen Dep. at 54, 59, 80-82; Chartwell 1/27/14 Presentation; Bensen Decl. ¶ 5-7; Smalley, Jr. Decl. ¶¶ 7-9; Fresh Decl. ¶ 7; Geerdes Dep. at 70-71).

8.     Chartwell explained to the RVR Defendants on January 27, 2014 that it was trying to estimate the low end of the valuation range because that is where Chartwell advised the RVR Defendants that the ESOP trustee would likely start negotiations. (*See id.*; Bensen Dep. at 80, 136; Smalley Dep. at 93-94, 101; Fresh Dep. at 180-182; Margarit Dep. at 120; Fresh Decl. ¶ 7).

9.     On January 27, 2014, Chartwell explained the concept of "adequate consideration" (fair market value) to the RVR Defendants and why the ESOP could not lawfully pay more than fair market value for the stock.  (Smalley, Jr. Dep. at 94-95; Bensen Decl. ¶ 8; Smalley, Jr. Decl. ¶ 9; Smalley Decl. ¶ 11; Fresh Decl. ¶ 5).

10.     On January 27, 2014, Chartwell explained to the RVR Defendants the responsibilities of the ESOP trustee, the ESOP trustee's financial advisor, and the ESOP trustee's legal counsel, as well as how Chartwell would advise RVR in its negotiations with the ESOP trustee. (*Id.*; Bensen Dep. at 208; Smalley Dep. at 46; Fresh Decl. ¶ 5).

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

11. On February 27, 2014, RVR retained Chartwell to serve as its financial advisor. (Fresh Decl. ¶ 8 and Ex. 1, Chartwell Engagement Letter; Smalley, Jr. Dep. at 74-75).

12. Prior to May 28, 2014, Bensen and the Smalleys had little to no knowledge regarding how privately-held stock was valued or the valuation methodologies used to value private company stock. (Bensen Decl. ¶ 9; Smalley, Jr. Decl. ¶ 10; Smalley Decl. ¶ 12).

13. In early March 2014, Greenberg Traurig and Chartwell met with three trustee candidates for RVR's Board to consider retaining to represent the ESOP, Reliance Trust Company ("Reliance"), Alerus Financial, and GreatBanc Trust, to confirm their interest in being interviewed by RVR and ensure the candidates were each independent of RVR, the RVR Defendants, and the Selling Shareholders. (Defs.' 2d Am. Initial Discl. at Ex. A; Smalley Decl. ¶ 14; Fresh Decl. ¶¶ 10-11).

14. Reliance, Alerus Financial, and GreatBanc Trust advised Chartwell that they were free of conflicts from RVR and the Selling Shareholders. (Fresh Decl. ¶ 10).

15. In late March 2014, Reliance, Alerus Financial, and GreatBanc Trust were provided with information regarding RVR and its business as well as a multi-page list of questions that the candidates should be prepared to answer in advance of the interview. (Smalley Dep. at 48; Martin Notes on ESOP Trustee Introduction Materials; Fresh Decl. ¶ 11).

16. Between March 31 and April 1, 2014, the RVR Defendants, Greg Fresh and Ted Margarit of Chartwell, and Marc Baluda of Greenberg, participated in the in-person trustee interviews, provided the candidates with additional information regarding RVR, its business, and its history, and asked the candidates detailed questions, including: (a) the trustee's experience in ESOP transactions, (b) whether the trustee candidate would retain a financial advisor and/or legal advisor to assist it with the possible transaction, and (c) whether the trustee candidate had sufficient capacity and resources to evaluate, negotiate, and close (or reject) a potential ESOP transaction by the proposed date of May

27, 2014. (Smalley, Jr. Dep. at 81-86; Bensen Dep. at 208; Fresh Decl. ¶ 12; Martin 5/18/21 Dep. at 291-292; Bensen Decl. ¶ 13; Smalley, Jr. Decl. ¶ 14; Smalley Decl. ¶ 16).

17. During its in-person interview, Steve Martin and Bucky Wright of Reliance explained that (a) it had served as trustee for more than 200 ESOP transactions since 2007, (b) it would retain legal and financial advisors to assist it in evaluating and negotiating a potential transaction; and (c) the proposed time frame for evaluating, negotiating, and closing a deal by May 27, 2014 was "perfect." (Martin Notes on Trustee Introduction Materials at 9, Martin 5/18/21 Dep. at 283-284; Bensen Decl. ¶ 15; Smalley, Jr. Decl. ¶ 16; Smalley Decl. ¶ 18; Fresh Decl. ¶ 13).

18. After receiving input and guidance from Bensen, Chartwell, and Greenberg, Reliance was retained to serve as the ESOP Trustee. (Bensen Decl. ¶ 16; Smalley, Jr. Decl. ¶ 17; Smalley Decl. ¶ 19; Fresh Decl. ¶ 13).

19. Plaintiff admits that Reliance had the credentials to serve as the RVR ESOP Trustee. (Pl.'s Response to Bensen's Request for Admission No. 56).

20. On April 4, 2014, Reliance was notified that it was selected to serve as the RVR ESOP Trustee. (Smalley Decl. ¶ 22; Martin 5/18/21 Dep. at 285-286; Fresh Decl. ¶ 13).

21. Reliance retained SRR to serve as its financial advisor and K&L Gates to serve as its legal advisor for purposes of assisting Reliance evaluate and negotiate a potential ESOP transaction. (Reliance Engagement Letter at 1-2; Fresh Decl. ¶ 13).

22. Prior to their engagement by Reliance, SRR and K&L Gates advised Reliance they had no conflicts of interest. (Reliance Resp. to Pl. Interr. No. 8).

23. After Reliance identified its proposed advisors to Chartwell, RVR conducted additional diligence and determined SRR and K&L Gates to be experienced and well-qualified ESOP advisors. (Smalley, Jr. Decl. ¶ 20; Smalley Decl. ¶ 22; Fresh Decl. ¶ 12).

24. RVR was comfortable with Reliance's decision to retain SRR as all three trustee candidates had mentioned during their interviews that SRR was one of their

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

preferred financial advisors. (*Id.*; Defs.' 2nd Am. Initial Discl. at 10-11; Fresh Decl. ¶ 12).

25.    In its engagement letter, Reliance agreed "to serve as trustee under the ESOP with respect to fiduciary duties allocated to the trustee [under the] terms of the ESOP, this letter agreement, and applicable law." (Reliance Engagement Letter at 1).

26.    Reliance also agreed in its Engagement Letter to "assume the fiduciary responsibility for determining, in consultation with its advisors, whether the price proposed to be paid for the stock in the Proposed Transaction is not more than the fair market value thereof, and whether the Proposed Transaction… is fair from a financial viewpoint to the ESOP and its participants. Reliance's determinations will be based upon such factors and information as it considers relevant including the appraisal by the independent appraiser and financial advisor of the stock." (*Id.* at 1, ¶ 2).

27.    Reliance's Engagement Letter also provided that SRR would serve "as an independent appraiser and financial advisor" and that the law firm of K&L Gates would serve as Reliance's legal counsel. (*Id.* at 2, ¶ 4).

28.    The K&L Gates engagement letter provided that it had conducted a conflicts check and that it would provide independent professional judgment when providing advice to Reliance. (K&L Gates Engagement Letter at 3, 5).

29.    The SRR engagement letter represented that (1) SRR's "services will be performed with reasonable care in a diligent and competent manner", and (2) "[n]one of our employees who will work on this engagement have any known financial interest in the Company or the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach." (SRR Engagement Letter at 7-8).

30.    On April 16, 2014, Chartwell, Greenberg, and the RVR Defendants made an in-person management presentation to Reliance and Reliance's advisors. (Martin 5/18/21 Dep. at 38-39; Fresh Decl. ¶ 14; Bensen Decl. ¶ 21). The presentation lasted several hours, involved a detailed review of RVR and its business, and included a question-and-answer session and a tour of the facility. (*Id.*)

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

5

31.    On April 17, 2014, Chartwell made the pre-populated due diligence data room available to Reliance's advisors, K&L Gates and SRR. (Defs.' 2nd Am. Initial Disc. at Ex. A; Smalley Decl. ¶ 25; Fresh Decl. ¶ 15).  Materials immediately made available to Reliance's advisors on this date included audited financial statements. (*Id.*).

32.    On April 21, 2014, Chartwell provided Reliance and its advisors the initial transaction proposal, which included a $143.9 million purchase price for 100% of RVR's stock, and term sheet, including financial and non-financial terms, including the addition of Bensen to the RVR Board, and explained the initial proposal during a conference call. (Chartwell 4/21/14 Presentation; Term Sheet; Fresh Decl. ¶¶ 16-17; Smalley Decl. ¶ 26).

33.    Following the presentation of the initial proposal, Chartwell, Greenberg, Wells Fargo Advisors, and BDO provided the RVR Defendants with regular (at least weekly and, often, daily) updates on Reliance's due diligence requests, follow up questions asked by SRR, K&L Gates, and Reliance, and the status of the negotiations. (Smalley, Jr. Dep. at 95-96; Martin 5/18/21 Dep. at 289-290; Smalley Decl. ¶ 28; Bensen Decl. ¶ 25; Smalley, Jr. Decl. ¶ 26; Fresh Decl. ¶ 18).

34.    The RVR Defendants provided Reliance and Reliance's advisors with direct access to Chartwell, Greenberg, Owen Bird, BDO, and Weiss Brown to facilitate due diligence, answer outstanding inquiries, and to negotiate outstanding deal terms. (Smalley Decl. ¶ 25; Bensen Decl. ¶ 22).

35.    Plaintiff is not alleging that any of the RVR Defendants or Selling Shareholders "made a misrepresentation of material fact in connection with the Transaction that impacted the fair market value of the RVR stock sold to the Plan and/or impacted the fairness of the Transaction to the Plan."  (Pl.'s Resp. to Joint Set of Contention Interr. No. 2).

36.    Plaintiff is not alleging that any of the RVR Defendants or Selling Shareholders withheld any material information from Reliance or its advisors in connection with the Transaction. (Pl.'s Resp. to Joint Set of Contention Interr. No. 3).

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

37. The RVR Defendants knew that SRR had prepared at least one valuation and that this valuation was being considered and vetted by the Reliance's Subcommittee. (Trustee Certification; SRR Fairness Opinion; Smalley Decl. ¶ 28; Bensen Decl. ¶ 25; Fresh Decl. ¶ 18; Stock Purchase Agreement at pp. 1, 19).

38. The RVR Defendants did not participate directly in the negotiations; instead, Chartwell presented RVR's original offer and subsequent counter-offers to Reliance and its advisors. (Smalley Decl. ¶ 32; Fresh Decl. ¶¶ 16, 19; Smalley, Jr. Decl. ¶¶ 24-29).

39. Multiple counter-offers were made in response to the April 21, 2014 initial proposal over the course of the next several weeks. (Fresh Decl. ¶¶ 18-19; Bensen Dep. at 133-137, 140-141; Smalley, Jr. Dep. at 153-155; Smalley Decl. ¶ 29).

40. Prior to May 28, 2014, the RVR Defendants were aware that Reliance and its advisors engaged in negotiations to modify various corporate organization documents and employment agreements. (Smalley Decl. ¶ 33; Bensen Decl. ¶ 25,29, 33; Smalley, Jr. Decl. ¶¶ 26, 30-31).

41. During negotiations, the Selling Shareholders initially proposed that the Smalleys would have the right to appoint the RVR Board so long as the warrants were outstanding. Reliance rejected this proposal. (Smalley Jr. Decl. ¶ 30; Martin 5/18/21 Dep. at 165-168; Bensen Decl. ¶ 33).

42. Reliance negotiated for and obtained the right of the ESOP Trustee to vote annually on a panel of director-candidates to be proposed by the RVR Board. (Smalley Decl. ¶ 33; Martin 5/13/21 Dep. at 176-178; Amended Bylaws at ARGENT_0000704). Reliance, on behalf of the ESOP, also had the right to call a special meeting at any time to remove any director that Reliance found to be imprudent to retain. (RVR Bylaws at Article 2, ¶ 3 at ARGENT_0000693; Martin 5/13/21 Dep. at 176-178, 193; Trust Agreement at § 2.3(a)).

43. Reliance negotiated changes to the terms of Bensen's and the Smalleys' pre-existing employment agreements, including elimination of the RVR Defendants'

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

right to unilaterally trigger severance payments, the requirement that a release be executed in exchange for receipt of any severance, and a requirement that the RVR Defendants' compensation could not be increased without the approval of the ESOP Trustee. (Smalley Decl. ¶ 33; Bensen Decl. ¶ 33; Smalley, Jr. Decl. ¶ 30).

44.    Prior to completing the Transaction on May 28, 2014, the RVR Defendants were aware of and relied upon: (a) Reliance's representation in the Stock Purchase Agreement that "the Trust has received an opinion from its independent financial advisors reflecting that: (i) the consideration paid for the shares of the Common Stock under the terms of this Agreement is not greater than the fair market value of such shares as such term is used in determining adequate consideration pursuant to Section 3(18) of [ERISA]"; (b) Reliance's representation in the Stock Purchase Agreement that "the Trust has received an opinion from its independent financial advisors reflecting that … (vi) the terms and conditions of the transactions contemplated by the Transaction Documents, taken as a whole, are fair to the ESOP from a financial point of view"; (c) Reliance's representation in the Stock Purchase Agreement that it had analyzed, reviewed and approved the Fairness Opinion and accompanying report prepared by SRR as an "Independent Financial Advisor"; and (d) Reliance's representation in the Stock Purchase Agreement that "[n]either the execution nor the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will (i) violate any Laws to which the ESOP is subject or any provision of the trust documents of the ESOP." (Stock Purchase Agreement at 1, 19; Smalley Decl. ¶ 34; Bensen Decl. ¶ 34; Smalley, Jr. Decl. ¶ 31; Bensen Dep. at 220-221).

45.    Representations and opinions reviewed and relied upon by the RVR Defendants prior to the close of the ESOP Transaction relating to the fairness of the transaction to the RVR ESOP and the legality of the ESOP Transaction also include SRR's representations in its May 28, 2014 fairness opinion that: (1) "the consideration to be paid by the ESOP for the ESOP Shares purchased pursuant to the terms of the Transaction is not greater than the Fair Market Value of such shares"; (2) "the interest

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

rate on the ESOP Loan is not in excess of a reasonable interest rate"; (3) "the financial terms of the ESOP Loan are at least as favorable to the ESOP as would be the terms of a comparable loan resulting from arms-length negotiations between independent parties"; and (4) "the terms and conditions of the Transaction, taken as a whole, are fair to the ESOP from a financial point of view." (SRR Fairness Opinion; Smalley Decl. ¶¶ 34-35; Bensen Decl. ¶¶ 34-35; Smalley, Jr. Decl. ¶¶ 31-32).

46.    Representations and opinions reviewed and relied upon by the RVR Defendants prior to the close of the ESOP Transaction relating to the fairness of the transaction to the RVR ESOP and the legality of the ESOP Transaction also include SRR's representations in its May 28, 2014 fairness opinion that: "SRR is independent of the parties to the Transaction (other than the ESOP) within the meaning of proposed regulation 29 CFR 2510.3-18(b) issued by the [DOL] and section 401(a)(28)(C) of the Internal Revenue Code of 1986." (SRR Fairness Opinion at 2, 4; Smalley Decl. ¶¶ 34-35; Bensen Decl. ¶¶ 34-35; Smalley, Jr. Decl. ¶¶ 31-32).

47.    Prior to approving the ESOP Transaction, the RVR Defendants reviewed and relied upon Reliance's certification in the Trustee Certificate that the "Trustee has entered into the Agreement in the best interest of the participants and beneficiaries of the ESOP for the exclusive purpose of providing benefits to the participants and beneficiaries of the ESOP, and with the care, skill, prudence and diligence that a prudent person, acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like a[i]ms" in deciding whether to execute the Stock Purchase Agreement. (Trustee Certification; Smalley Decl. ¶¶ 34-35; Bensen Decl. ¶¶ 34-35; Smalley, Jr. Decl. ¶¶ 31-32).

48.    The representations of the law firms that were relied upon by the RVR Defendants prior to the close of the ESOP Transaction include (a) K&L Gates' representation in a May 28, 2014 written opinion that the "acquisition of the ESOP Shares by the Trust pursuant to the Stock Purchase Agreement is exempt from the prohibited-transaction provisions of Section 406 of ERISA and Section 4975(c) of the Code by virtue

9

of Section 408(e) of ERISA and Section 4975(d)(13) of the Code"; and (b) Greenberg's representation in a written opinion letter dated May 28, 2014 that the "execution, delivery and performance of the Transaction Documents and consummation of the Transactions by each of the Opinion Parties [defined as RVR, Cruise America, and Cruise Canada] will not violate any applicable law, rule or regulation affecting such Opinion Party." (K&L Gates Engagement Letter; Greenberg Opinion Letter; Smalley Decl. ¶¶ 34-35; Bensen Decl. ¶¶ 34-35; Smalley, Jr. Decl. ¶¶ 31-32).

49.     On May 28, 2014, the RVR ESOP acquired 100% of RVR's stock from the Selling Shareholders, pursuant to the Stock Purchase Agreement, for a total price of $105 million. (Stock Purchase Agreement; Smalley, Jr. Decl. ¶ 33). RVR ESOP financed the stock purchase with a $104,401,014.94 loan from RVR ("ESOP Loan") and a $598,985.06 contribution from RVR. (Smalley, Jr. Decl. ¶ 33).

50.     RVR funded the ESOP Loan using existing cash, a draw from RVR's revolving line of credit with Wells Fargo Bank, and proceeds from a bridge term loan of $87 million from Wells Fargo Bank. (Smalley, Jr. Decl. ¶ 33).

51.     Following the close of the Transaction, the Smalleys loaned $95 million to RVR in exchange for junior subordinated notes (the "Seller Notes") and warrants. (Smalley, Jr. Decl. ¶ 34). The Seller Notes had a cash interest rate of 2.5% per year, payment-in-kind ("PIK") compounding interest at 1.0% per year, non-compounding PIK interest at 2.15% per year, and detachable warrants to purchase 666,667 shares of RVR stock at an exercise price of $7.50 per share. (Smalley, Jr. Decl. ¶ 34).

52.     The warrants were integral the Transaction financing and used to partially offset the below market interest rates on the Seller Notes. (Smalley, Jr. Decl. ¶ 35).

53.     All of the annual appraisals of the RVR stock held by the ESOP have been conducted by SRR using the same methodology used in the pre-transaction valuation of RVR stock. (Bensen Decl. ¶ 36; Smalley Decl. ¶ 38).

54.     As of May 31, 2014, the valuation of the RVR stock held by the ESOP was $8.3 million. (Bensen Decl. ¶ 38; Smalley Decl. ¶ 42; Smalley, Jr. Decl. ¶ 39).

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

RESPECTFULLY SUBMITTED this 25th day of March, 2022.

By:  */s/ Adrianna Griego Gorton*
Adrianna Griego Gorton, SBN 031836
Todd D. Wozniak (admitted *pro hac vice*)
Lindsey R. Camp (admitted *pro hac vice*)

*Attorneys for Defendants Eric Bensen, Randall Smalley, Robert Smalley, Jr., Family Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, Marital Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, Survivor's Trust Created Under The Smalley Revocable Trust Dated July 8, 2004, and RVR, Inc.*

11

**CERTIFICATE OF SERVICE**

☒    I hereby certify that on March 25, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Isidro Mariscal
Eric C. Lund
Brendan Ballard
Peter B. Dolan
Katrina Liu
U.S. Dept. of Labor, Office of the Solicitor
Plan Benefits Security Division
P.O. Box 1914
Washington, D.C. 20013
mariscal.isidro@dol.gov
lund.eric@dol.gov
ballard.brendan@dol.gov
dolan.peter@dol.gov
liu.katrina.t@dol.gov
*Attorneys for Plaintiff*

Jessica R. Maziarz
Gregory B. Ianelli
Bryan Cave Leighton Paisner LLP – Phoenix, AZ
1 N. Central Avenue, Suite 2100
Phoenix, AZ 85004
Jessica.maziarz@bclplaw.com
Gregory.ianelli@bclplaw.com

William B. Brockman
Bryan Cave Leighton Paisner LLP – Atlanta, GA
One Atlantic Center
1201 W. Peachtree Street, NW, 14th Floor
Atlanta, GA 30309
Bard.brockman@bclplaw.com

Meredith P. Jacobowitz (*pro hac vice*)
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102
meredith.jacobowitz@bclplaw.com

*Attorneys for Defendant Reliance Trust Company*

By: */s/ Carolyn Smith*

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

12