**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Julie A Su,

                Plaintiff,

v.

Eric Bensen,

                Defendant.

No. CV-19-03178-PHX-ROS

**ORDER**

On November 8, 2024, per the Court's order on August 15, 2024 (Doc. 492), the parties filed a joint statement setting forth issues to be briefed by the parties and ruled on before setting a schedule for damages-related discovery and proceedings (Doc. 508). Plaintiff and Defendants each filed a memorandum addressing proposed topics (Docs. 514, "Pl's Memo"; 515, "Defs' Memo"), and both parties responded (Docs. 516, "Pl's Resp,"; 517, "Defs' Resp."). Defendant RVR Incorporated ("RVR") also submitted a memorandum of law. (Doc. 524, "RVR Memo").[1]

## I.  Harm to ESOP

Before considering each of the parties' topics, the Court will consider Defendants' arguments that the ESOP has not been damaged. Defendants raise the following arguments: (1) the ESOP purchased RVR stock from Defendants via a loan on which it has only paid $47.78 million to date, (2) the ESOP did not pay $47.78 million to RVR at the time of the RVR stock purchase and has only been making annual payments of $4.72 million each

---

[1] On May 30, 2025, Defendant RVR filed a Motion to Stay Pending Settlement Discussions (Doc. 528), which has not been fully briefed, but will be resolved after full briefing.

year, (3) RVR's stock has outperformed internal projections created prior to the ESOP, and (4) the approximately $20.5 million paid by Reliance Trust to the ESOP in settlement establishes a windfall for the ESOP when considered with these other elements of the transaction. Plaintiff responded and the Court will consider each in turn.

### A. Loan Purchase

Defendants argue because the ESOP purchased RVR stock from Defendants via a loan to which it has only paid $47.78 million to date (the "ESOP Loan"), the Court should limit harm to the ESOP by ordering $47.78 million as the total amount the ESOP pays for the purchase of RVR stock. While Defendants acknowledge courts have held, under ERISA, loans owned by ESOPs are counted toward an ESOP's damages at the time the loan is obtained, not when the ESOP repays the loan, Defendants request the Court use its equitable powers to render the loan terminated. (*See* Def's Memo at 2) ("the Individual Defendants ask this Court to enter an order based on its equitable powers stating … the ESOP is not to make any additional loan payments, and the ESOP will only have paid $47.78 million for 100% of the shares of RVR.").

In response, Plaintiff argues: (1) Defendants' position runs afoul of well-settled case law, (2) Defendants neither have standing nor have they demonstrated the ESOP Loan can be reformed, (3) if reformation is possible, it would cause other inequities to the ESOP, and (4) any decision where RVR forgives the ESOP Loan would relieve Defendants of liability for their fiduciary breaches, which violates public policy and is void under ERISA section 410(a). As discussed below, the Court agrees reformation is not appropriate.

First, courts have repeatedly rejected the assertion that a buyer does not pay a full purchase price if it receives a loan for the full price of a transaction. In *Perez v. Bruister*, 823 F.3d 250, 270 (5th Cir. 2016), the Fifth Circuit rejected a similar argument that an ESOP's damage was only equivalent to the present amount of cash payments and interest made on the ESOP's loan stating, "Every court to consider this question has rejected the Defendants' contention that the proper measure of recovery excludes the debt that remains unpaid or is later forgiven." *See also Henry v. U.S. Trust Co. of Cal., N.A.,* 569 F.3d 96,

98-100 (2d Cir. 2009) ("[t]he assumption of indebtedness has immediate legal and economic consequences even before the borrower begins to repay the debt"); *Chesemore v. Alliance Holdings*, Inc., 948 F. Supp. 2d 928, 943–45 (W.D. Wis. 2013); *Neil v. Zell*, 767 F. Supp. 2d 933, 945–46 (N.D. Ill. 2011); *Reich v. Valley Nat'l Bank of Az.*, 837 F. Supp. 1259, 1274 (S.D.N.Y. 1993).

Next, Defendants have neither demonstrated standing to request the ESOP Loan be reformed as an agreement solely between RVR and the ESOP[2] or that reformation is an equitable remedy here. Reformation typically requires a showing of mutual mistake or unilateral mistake by one party and fraud by the other party. *See Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) ("It is unclear whether we should analyze reformation in the context of trust law or contract law . . . Under both theories, however, reformation is proper only in cases of fraud and mistake." (internal citation omitted)). Defendants failed to plead in their Answer or identify in their brief a mutual mistake that RVR and the ESOP made when drafting the ESOP Loan Agreement.

Even if Defendants identified the means by which the Court could equitably reform the loan, reformation of the ESOP Loan would not restore losses incurred to ESOP participants. Because the creation of the ESOP significantly damaged RVR's stock, mere modification of the ESOP Loan fails to adequately address the ESOP's overpayment and subsequent reduction in the value of RVR's stock.

In sum, the Court finds the structure of the ESOP Loan does not evidence a lack of harm to the ESOP nor have Defendants established reformation of the loan is an appropriate remedy here. Courts have repeatedly held the assumption of indebtedness by an ESOP has immediate consequences and as Defendants themselves acknowledge, "courts have held that, under ERISA, loans owed by ESOPs are counted towards an ESOP's damages at the time the loan is held, not when the ESOP repays the loan." (Defs' Memo at 3). Defendants have not provided any persuasive authority to show how modification of an ESOP loan was used as an equitable remedy in any case like this one

---

[2] In its brief, RVR states at this time it can neither agree nor disagree whether the ESOP Loan can be modified. (RVR Memo at 3-4).

1    nor how reformation of the ESOP Loan would properly address the ESOP's overpayment
2    and commensurate reduction in the value of RVR.

3    **B.  ESOP Payment**

4    Defendants also argue because the ESOP has only been making annual payments of
5    $4.72 million per year for the RVR stock purchase, the ESOP's incurred overpayment on
6    the purchase of RVR stock to date is only $14.78 million. Additionally, Defendants argue
7    the ESOP gained significant benefits by paying $47.78 million over an extended period
8    rather than at one time in 2014. As evidence of this, Defendants cite to *Walsh v. Vinoskey*,
9    19 F.4th 672, 682 (4th Cir. 2021). There, the Fourth Circuit overturned a district court's
10    decision to not reduce an ESOP's damage award for loans forgiven by the Defendant,
11    finding this would "result in an inappropriate windfall for the ESOP."

12    In response, Plaintiff reiterates arguments made against the structure of the ESOP
13    Loan evidencing a lack of harm to the ESOP. Additionally, Plaintiff contends (1) by
14    arguing the ESOP's debt incurred in making the overpayment should not count toward
15    losses, Defendants ignore the economic reality of the ESOP incurring debt and the
16    immediate loss experienced by the ESOP when it overpaid for RVR stock, and (2) argues
17    *Vinoskey* supports Plaintiff's position because Defendants have not forgiven any loans in
18    this case. *See Vinoskey*, 19 F.4th at 684-85 ("There is another meaningful difference
19    between *Henry II* and our case. In *Henry II*, the fiduciary bank that was responsible for the
20    stock sale was not the same defendant that cancelled the debt. . . .[H]ere we are assessing
21    the damages to be paid by Vinoskey, who also forgave the ESOP loans.")

22    The Court finds the structure of annual payments does not indicate the ESOP failed
23    to suffer a loss from overpayment at the time of the purchase of RVR stock. Additionally,
24    because no loans have been forgiven and the Court does not intend to reform the ESOP
25    Loan, *Vinoskey* does not compel a reduction of damages.

26    **C.  RVR Post-Transaction Performance**

27    Next, Defendants argue because RVR stock has significantly outperformed previous
28    projections, further analysis should be allowed in this phase which will reveal the ESOP

- 4 -

underpaid for RVR. Defendants seek to introduce an updated valuation of RVR replacing projections with RVR's actual results to indicate the ESOP underpaid for RVR. Defendants cite two cases in support of this proposition. *See VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) ("A company's actual subsequent performance is something to consider when determining ex post the reasonableness of a valuation."); *Quintel Corp., N.V. v. Citibank, N.A.*, 596 F. Supp. 797, 805 (S.D.N.Y. 1984) (post-closing evidence of performance is relevant to the issue of negligence in investigating those projections, adding that "the post-closing evidence as to the discrepancies between the projections and the result goes directly to the question of what factors were in existence at that time").

In response, Plaintiff contends that subsequent stock gains are irrelevant to the loss incurred by the ESOP at the time of fiduciary breach and that courts have repeatedly adopted this reasoning. *See Brundle v. Wilmington Trust, N.A.,* 919 F.3d 763, 782 (4th Cir. 2019) ("Any subsequent gains involving the stock, which the ESOP would have obtained regardless of the overpayment, have no bearing on that loss."); *see also*, *Cf. Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 443-44 (6th Cir. 2002) (stating defendants' argument ESOP participants only care about stock when they retire "fails to realize the realities of investing" where the ESOP "ha[s] every incentive to purchase the stock at the lowest possible price" and, by overpaying for company stock, the ESOP "suffered a loss" because its payment "was a form of deferred compensation for the [ESOP] participants"). Plaintiff also argues Defendants' two cited cases, *VFB LLC* and *Quintel Corp., N.V.*, are inapposite because they do not involve a determination of losses based on an initial overvaluation of stock.

The Court agrees with Plaintiff that RVR's post-transaction performance does not establish a lack of harm to the ESOP. The Court already determined RVR stock's fair market value at the time of the transaction and Defendants have not convinced the Court it should consider RVR's post-transaction performance to offset the losses incurred by the ESOP at the time of breach.

**D. Reliance Trust Settlement**

1   Reliance Trust has already paid approximately $20,454,545 million to the ESOP as
2   a result of their settlement. The consent agreement with Reliance Trust states any judgment
3   rendered in favor of Plaintiff "shall be reduced by an amount equal to the settlement
4   amount" (Doc. 297 at 6). Defendants contend the amount of the Reliance Trust settlement
5   when taken together with the structure and debt of the transaction establish ESOP has not
6   been harmed and has acquired a $5.72 million dollar windfall.  The amount of the Reliance
7   Trust settlement does not indicate the ESOP has not been harmed or otherwise received a
8   windfall. However, as agreed by the parties, the Court will reduce the judgment against
9   Defendants by amount of the Reliance Trust settlement. (Pl's Memo at 11; Def's Memo at
10  6; RVR Memo at 3)

11  **II.    Plaintiff's Topics**

12  Having considered whether the ESOP has been harmed, the Court will also address
13  Plaintiff's issues. Plaintiff requests the Court rule on: (1) whether the Court made the
14  requisite factual findings for liability on all three of her claims, and thus can rule on
15  Plaintiff's co-fiduciary and knowing participation claims; (2) the appropriate methodology
16  for calculating the losses arising out of the Court's liability determinations, including
17  principal and lost opportunity costs, for which fiduciaries are liable under ERISA §409, 29
18  U.S.C. § 1109; (3) whether, under ERISA §409, Defendants must disgorge the profits they
19  received through investing the ESOP's $72 million overpayment. and, if so, the proper
20  methodology for determining the amount that must be disgorged on this basis; and (4)
21  whether Defendants have waived the argument that the Secretary's damages award should
22  be set-off by later-occurring events, such as any reduction in Defendants' salaries, because
23  this issue was not plead as an affirmative defense in the Answer or Amended Answer.[3]

24  **A. Findings of Liability on Co-Fiduciary and Knowing Participation Claims**

25  The parties seek clarification on whether the Court made the necessary factual

26

27  [3] In the parties' joint statement (Doc. 508), Plaintiff's second topic was whether, based on the Court's determination that indemnification of the Individual Defendants is illegal, the Court can proceed with ordering an accounting and repayment of the fees advanced by
28  RVR for the Individual Defendants' legal defense.  Because both parties have indicated an agreement on this issue (Pl's Memo at 5; Defs' Resp. at 8), the Court will not address it.

findings to hold Defendants liable on the co-fiduciary and knowing participation claims. The Court indeed made the necessary and substantial findings of fact to find Defendants liable as co-fiduciaries and for knowing participation in a prohibited transaction.

Under ERISA, Defendants can be held liable as co-fiduciaries under the following circumstances: (1) if they participate knowingly in, or knowingly undertake to conceal, an act or omission of another fiduciary, knowing such an act or omission is a breach; (2) if, by their failure to comply with section 1104(a)(1) of this title in the administration of their specific responsibilities which give rise to their status as a fiduciary, they have enabled such other fiduciary to commit a breach; or (3) if they have knowledge of a breach by such other fiduciary, unless they make reasonable efforts under the circumstances to remedy the breach.  29 U.S.C. § 1105(a).  Unlike liability under § 1105(a)(1) and (3), proof of knowledge is not necessary for liability under § 1105(a)(2).

Similarly, liability against nonfiduciaries arises under 29 U.S.C. § 1132(a)(3) for knowingly participating in a prohibited ERISA transaction.  "Knowing participation" means "actual or constructive knowledge of the circumstances that rendered the transaction unlawful."  *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).  "The nonfiduciary need not have engaged in any wrongdoing.  It is enough if he had knowledge, based on the surrounding circumstances, that the fiduciary was engaging in a prohibited transaction."  *Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 924–25 (D. Haw. 2019).

In its Liability Order, the Court clearly made findings of fact establishing Defendants liable under 29 U.S.C. § 1104(a)(1) for failing to monitor Reliance.  (Liability Order at 37–43).  The Court also found "Reliance clearly breached its duties of loyalty and prudence" and explained in detail several glaring "red flags" perpetrated by Defendants which enabled Reliance to breach its fiduciary duties.  (*Id.* at 35, 39–41).  Based on these findings, there is no doubt Defendants are liable as co-fiduciaries under 29 U.S.C. § 1105(a)(2).  What is more, the Court explicitly found "Defendants had actual knowledge that Reliance was breaching its duties" and by failing to monitor Reliance, they failed to

take reasonable efforts to remedy Reliance's breach.  (*Id.* at 39). This is sufficient for liability under 29 U.S.C. § 1105(a)(1) and (3).

**B. Loss Calculation Methodology**

The parties seek clarification on the method of calculating loss arising out of the court's liability determinations. Plaintiff argues loss should be calculated by subtracting the fair market value of the stock as determined by the Court from the inflated price paid by the ESOP. Defendants assert this method of calculation is improper because the ESOP has not been harmed.

Liability for breaching fiduciary liability is assessed pursuant to ERISA section 409(a) which states a breaching fiduciary:

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). "Neither section 409(a) nor any other section of ERISA discloses the methods which are to be used in measuring the 'losses' for which breaching fiduciaries are to be held liable." *Kim v. Fujikawa*, 871 F.2d 1427, 1430 (9th Cir. 1989). "In determining this amount, a court 'should resolve doubts in favor of the plaintiffs.'" *Acosta v. City Nat'l Corp.,* 922 F.3d 880, 887 (9th Cir. 2019) (quoting *Kim*, 871 F.2d at 1431).

"To calculate the loss to an ESOP and compensate it for a fiduciary's ERISA violation, a court typically subtracts the stock's fair market value, as determined by the court, from the inflated price paid by the ESOP." *Brundle*, 919 F.3d at 781; *see also Bruister*, 823 F.3d at 265 (same) (collecting cases).

The Court finds the proper method of calculating damage is to subtract what the Court determined to be the fair market value of the RVR stock from the price paid by the ESOP for RVR stock. In its Liability Order, the Court determined the fair market value of the RVR stock was approximately $33 million, and by paying $105 million as a result of

Defendant's fiduciary breaches, the ESOP overpaid by $72 million. (Doc. 492 at 22, 24, 34-35). Accordingly, the Court finds this is the proper measure of loss.

### C.     Lost Opportunity Costs

In addition to overpayment, Plaintiff also seeks to recover lost opportunity costs for additional profit the ESOP would have gained if it was able to use the overpayment to pursue different investments. Defendants argue lost opportunity damages are unwarranted because in the absence of an overpayment, the ESOP would have only been loaned the fair market value of the sale, *i.e.* $33 million, and would not have control nor the ability to invest the remaining $72 million overpayment. As evidence, Defendants cite RVR and Wells Fargo's credit agreement, introduced as Joint Exhibit 47F, which states, "it [was] a condition precedent to [Wells Fargo's] obligation to advance the [$87 million] Bridge Loan that the Bank shall be satisfied" that "the proceeds of the Bridge Loan shall be used *solely* to fund the loan to the ESOP pursuant to the ESOP Loan and Pledge Agreement (with the proceeds in turn being used by the ESOP *solely to purchase shares of stock from the Financing Sellers* pursuant to the Stock Purchase Agreement)." JX47F at 23-24 (emphasis added). In response, Plaintiff contends a prohibition on lost opportunity damages would "immunize from money damages all trustees of ESOPs created by [leveraged buyouts] or ESOPs where the trustees' actions were contemporaneous or involved with the creation of the ESOP, regardless of the conduct of those trustees, and regardless of the consequences of that conduct." *Reich,* 837 F. Supp. at 1284.

Ninth Circuit authority requires losses to be calculated based on "at least the entire cost of the prohibited transaction." *City Nat'l Corp.*, 922 F.3d 880, 887 (9th Cir. 2019); (Doc. 277 at 25). The "cost" usually is "the illegal compensation plus the lost opportunity cost." *Id.* An award of lost opportunity costs "is 'a question of fairness, lying in the court's sound discretion, to be answered by balancing the equities.'" *Id.* (quoting *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995)).

Defendants cite *Crawford v. Lamantia,* 34 F.3d 28 (1st Cir. 1994), where an individual plan participant brought claims against trustees for breaching their fiduciary

duties by purchasing company stock at an inflated value. The First Circuit denied the plaintiff's claim for lack of standing holding there was no basis for concluding the funds used for the stock overpayment would have been available to the ESOP even if the company stock had been properly valued at the time of the original transaction and plaintiff failed to show defendants affected his benefits. Plaintiff argues this case is inapposite because it was decided on issues of Article III standing without addressing the merits of the alleged fiduciary breach, or the award of opportunity costs.

Plaintiff cites *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985), a case where the trustees of an ESOP, who were also high-ranking officials of a company, used ESOP funds to purchase additional shares of company stock at an inadequate price to defeat a tender offer by another party seeking to acquire the company. The Second Circuit awarded lost opportunity costs to the ESOP stating,

> In determining what the Plan would have earned had the funds been available
> for other Plan purposes, the district court should presume that the funds
> would have been treated like other funds being invested during the same
> period in proper transactions. Where several alternative investment strategies
> plausible, the court should presume that the funds would have
> been used in the most profitable of these.

*Id.* at 1056. Plaintiff also cites *Neil v. Zell*, 767 F. Supp.2d 933, 945–46 (N.D. Ill. 2011), where the district court found an ESOP trustee improperly approved of an ESOP's purchase of $250 million of company stock in a complex going-private transaction. After the ESOP's purchase, the company entered bankruptcy and the stock became worthless. *Id.* at 938. Following the liability phase of the case, defendant filed a motion for partial summary judgment seeking to cap damages associated with the ESOP's purchase. *Id.* The court rejected defendant's argument that lost opportunity damages were precluded merely because the ESOP was limited to investing in company stock and cited to *Donovan* for this proposition. *Id.*

Presently, it is unclear whether lost opportunity damages are warranted here and if so, what rate of prejudgment interest should apply. The cases cited by the parties for their

positions are not similar to the facts of this case. *Crawford*, as Plaintiff argues, was decided on the basis of standing and never substantively reached issues of fiduciary breach or lost opportunity. And while *Donovan* and *Neil* dealt more specifically with ESOP damage calculations, the transactions at issue in those cases are not similar to the ESOP's purchase of RVR stock in this case. Here, Plaintiff has not demonstrated the ESOP would have had access to the $72 million overpayment, let alone the opportunity to invest it in alternative profitable assets. While Plaintiff also argues a failure to award lost opportunity damages would immunize ESOPs created by leveraged buyouts or where the trustees' actions were contemporaneous with the creation of the ESOP, there is no complex leverage in this case, and it appears the ESOP's damage is largely captured in the amount of overpayment for RVR stock. However, the Court recognizes lost opportunity damages still might be appropriate, particularly in light of the fact the ESOP received a non-controlling equity interest in RVR. Accordingly, this issue will be resolved in the second trial.

### D. Disgorgement of Profits

Plaintiff also contends Defendants must additionally disgorge to the ESOP any profits resulting from Defendants' use of the overpayment they received for RVR stock. Plaintiff argues this is consistent with ERISA section 409(a) which states in addition to paying losses resulting from their breach, Defendants are liable to "restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). Defendants argue disgorgement is improper because Plaintiff has not nor will be able to establish a causal connection between an ESOP loss and any profits by the individual Defendants. "Section 1109 permits recovery of a fiduciary's profits only where there is a causal connection between the use of the plan assets and the profits made by fiduciaries on the investment of their own assets." *Leigh v. Engle*, 727 F.2d 113, 137 (7th Cir. 1984).

Disgorgement, often described as an accounting for profits, is "a form of '[r]estitution measured by the defendant's wrongful gain' rather than by the plaintiff's loss." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 663 (9th Cir. 2019) (citing

to RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51 cmt. a, at 204 (2011)); And under trust law, which provides valuable context to the ERISA scheme, disgorgement may be proper even if the breach of fiduciary duty is inadvertent or caused no loss to the trust beneficiary. *Edmonson v. Lincoln Nat'l Life Ins. Co*., 725 F.3d 406, 416 n.5 (3d Cir. 2013); George G. Bogert et al., *The Law of Trusts and Trustees* § 862 (rev. 2d ed. June 2020 update) ("[A] rule of damages provides that a trustee is liable for any profit he has made through his breach of trust even though the trust has suffered no loss.").

Although the Court disagrees with Defendants that the ESOP has not been harmed, the Court finds it presently unclear whether disgorgement should be awarded. As Defendants have noted, Plaintiff has not explicitly proved the amount overpaid in the transaction would have resulted in ESOP assets. This issue will be resolved in the second trial.

**E. Waiver of Setoff**

The parties also seek clarification on whether damages awarded should be reduced by the amount of compensation Defendants voluntarily waived. Plaintiff contends Defendants have waived this argument because it was not asserted in their Answer or any other filing until the parties' Joint Proposed Pretrial Order. Defendants argue ERISA case law shows the decision not to plead an offset or setoff does not result in a waiver. *See Lehr v. Perri*, 2019 WL 1556672, at *5 (E.D. Cal. Apr. 10, 2019) ("consistent with ERISA, the court can set off the money Colleen owes to the plan against the money owed to her by the plan," even though "defendants did not plead set off as an affirmative defense"); *Browe v. CTC Corp*., 2022 WL 17729645, at *15 (D. Vt. Dec. 16, 2022) ("a set-off against Plaintiff Launderville's receipt of a Plan distribution is available even when not pled as an affirmative defense"). For equitable reasons, the Court declines to deem Defendants' offset arguments as waived.

Defendants argue they deferred $42.22 million in compensation owed under their Employment Agreements with RVR from 2014-2022 and they have a contractual right to such guaranteed compensation. Defendants also cite several cases to show an equitable

reduction is appropriate even if Defendants did not have a contractual right to their compensation if a breaching fiduciary's actions benefit the ESOP at the cost of the breaching fiduciary. *See Perez v. City Nat'l Corp*., 231 F. Supp. 3d 593, 596 (C.D. Cal. 2017), *order vacated in part sub nom. Acosta v. City Nat'l Corp*., 2018 WL 4378666 (C.D. Cal. Apr. 18, 2018) ("City National, as the breaching fiduciary, is entitled to offsets for certain items from the entire cost of the prohibited transaction only if it demonstrates that those items benefitted the Plan."); *Vinoskey*, 19 F.4th 672, 682 (4th Cir. 2021) (overturning district court's decision to not reduce an ESOP's damage award for loans forgiven by the defendant, finding this would "result in an inappropriate windfall for the ESOP").

In response, Plaintiff argues any purported waiver of compensation by Defendants was an independent act irrelevant to the ESOP's losses at the time of the transaction. Plaintiff cites several cases showing courts have repeatedly denied such waivers as a remedial offset. *See Brundle*, 919 F.3d at 782-83 (finding that the sellers' write-off of more than $30 million of the ESOP's debt was an "independent act [that] has no bearing on the ESOP's loss"); *Bruister*, 823 F.3d at 272 (post-transaction restructuring of ESOP's loan and resulting tax benefit were "too remote . . . to translate into a measurable effect on damages"); *Henry v. U.S. Trust Co. of California, N.A*., 569 F.3d 96, 99-100 ("The 2006 sale/debt forgiveness transaction did not purport to be a settlement of any issue relevant to this appeal," "was independent of earlier transactions," and "had no effect on the 1994 transaction's purchase price . . . .").

Plaintiff also argues accepting Defendants' waived compensation as a remedial offset would be at odds with the record in this case which indicates Defendants waived their bonuses when they began receiving interest payments on seller notes, rather than at RVR's request or because RVR was struggling financially. Day 3 Tr. 237:15-238:18 (Smalley); *see also* Day 4 A.M. Tr. 130:1-11 (Smalley Jr.); Day 3 Tr. 30:11-31:16 (Bensen) (testifying that it was a "personal decision" by the Smalleys to waive their bonuses, the Company did not ask them to do it, and there were no problems with the Company); Doc. 482 at 35, ¶ 220 (conceding that "the Smalleys' [sic] voluntarily cut their compensation

post-transaction, even though the Company was doing much better than forecasted, because the Smalleys felt it was the right thing to do."). Plaintiff also argues because Defendants' compensation was only guaranteed while Defendants were performing executive duties and because their executive roles were modified in January 2018, they are not entitled to the $42 million in compensation they claim under their employment agreement and their cases are inapposite.

The Court agrees with Plaintiff that Defendants are not entitled to an offset based on their compensation. Defendants' cases indicate that setoffs may be warranted if they can demonstrate "those items benefitted the Plan." *Perez*, 231 F. Supp. 3d at 596. However, in this case, Defendants have not proven they are entitled to the salary they claim, that such salary was deferred or waived for the purpose of RVR or the ESOP, nor that the ESOP benefitted in any way from their deferral of salary. Thus, the Court will not set off Defendants' salaries against their damage award. Nor will the Court use Defendants' salary to relitigate the fair market value of RVR at the time of the stock purchase, which has already been definitively determined in this case.

## II. Defendants' Topics

Defendants have requested the Court rule on the following topics: (1) whether the ESOP has been harmed at all, (2) whether RVR's post-close performance is evidence of the Company's valuation, and thus establishes that the ESOP has not been harmed, (3) the appropriate methodology to determine "lost opportunity" damages, if any, (4) the appropriate methodology to determine the 20% penalty, (5) relatedly, whether the value to the ESOP of the Individual Defendants' decision to defer compensation is simply the amount of compensation that was deferred or, alternatively, an adjustment to the EBITDA calculation supporting the valuation, (6) whether and to what extent the Individual Defendants' decision to defer their post-closing compensation impacts the value of RVR and thus impacts the amount to which the ESOP has been damaged (if at all), and (7) whether the appropriate outcome in light of this Court's ruling is rescission of the sale agreement of the Company's stock by the Smalleys and Bensen to the ESOP. (Doc. 508 at

3). The Court has already considered whether the ESOP has been harmed, lost opportunity damages and potential setoffs to damages based on Defendants' compensation. The Court now turns to the remaining topics.

**A. Other Penalties**

ERISA section 502(l), 29 U.S.C. § 1132(l) allows for a 20% civil penalty to be assessed on a breach of fiduciary duty claim. Defendants argue Plaintiff should not be entitled to such a penalty because Plaintiff did not include such a demand for relief in its Amended Complaint. Plaintiff argues the plain text of section 502(l)(1) and (3) allows such a penalty even if not specifically pled. ERISA section 502(l)(1) provides:

> (1) In the case of—
>      (A) any breach of fiduciary responsibility under (or other violation of) part 4 of this subtitle by a fiduciary, or
>      (B) any knowing participation in such a breach or violation by any other person,
> the Secretary shall assess a civil penalty against such fiduciary or other
> person in an amount equal to 20 percent of the applicable recovery amount.
> …
> (3) The Secretary may, in the Secretary's sole discretion, waive or reduce the penalty under paragraph (1) if the Secretary determines in writing that …

29 U.S.C. § 1132(l)(1), (3). Plaintiff argues the statute provides the Secretary "shall assess" the penalty, not that a court "may award" the penalty. *Id.* Moreover, Plaintiff argues the text reinforced the Secretary's independent authority to assess the penalty because Congress gave the Secretary "sole discretion" to "waive or reduce the penalty." *Id.*

The Court agrees with Plaintiff that the statutory framework indicates the penalty is an automatic consequence of a recovery, subject to the Secretary's discretion for reduction, and need not be specifically pled. Accordingly, the Court finds Plaintiff is entitled to recover the 20 percent penalty in this case at the Secretary's discretion.

**B. Recission of Company Sale Agreement**

Defendants argue the only appropriate remedy is to order recission of the transaction wherein Defendants return the purchase price to the ESOP, the ESOP returns RVR stock to Defendants and pays off the ESOP Loan, and RVR pays Defendants their deferred

1   compensation. Defendants cite several cases in which recission of a transaction was
2   considered. *See, e.g., Laidig v. GreatBanc Tr. Co*., 2023 WL 1319624, at *8 (N.D. Ill. Jan.
3   31, 2023) (declining to strike request for rescission at the pleading stage in the context of
4   an ESOP transaction); *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at *15 (C.D.
5   Cal. July 9, 2018) (same); *see also Eaves v. Penn*, 587 F.2d 453, 463 (10th Cir. 1978)
6   ("[T]he District Court, in the exercise of its discretion, properly concluded that rescission
7   of the purchase-sale agreement which restored the plan's original liquid assets was the
8   remedy most likely to protect the plan participants and effectuate the purposes of the
9   original profit-sharing plan.").

10  Plaintiff responds Defendants' request for recission violates standing case law and
11  trust principles. Plaintiff argues in each of Defendants' cited cases, plaintiffs rather than
12  defendants sought recission of the transaction. *See Laidig*, 2023 WL 1319624, at *8;
13  *Hurtado*, 2018 WL 3372752, at *15. In the only case where recission was actually ordered,
14  *Eaves v. Penn*, 587 F.2d 453, 463, Plaintiff argues the facts substantially differ from this
15  case because, in addition to plaintiffs rather than defendants requesting recission, *Eaves*
16  involved the conversion of a pre-existing cash distribution plan into a plan where
17  participants received stock with no ability for participants to require the plan or the
18  company repurchase the stock. *Id.* The district court found this resulted in a situation where
19  "vested participants' legitimate expectations of cash distributions upon retirement or
20  termination were severely jeopardized." *Id.* at 346.

21  Because a series of loan agreements exist in this case, rather than the conversion of
22  the pre-existing cash distribution plan in *Eaves*, Plaintiff argues recission poses much
23  greater challenges in this case. For example, if recission occurs Plaintiff argues (1) RVR
24  would need to pay millions in back taxes for the past 10 years,[4] (2) RVR employees'
25  existing retirement benefits would be revoked for the benefit of Defendants, and (3)
26  recission would force the claw back of millions of dollars paid to RVR employees who

27
28  ---
    [4] The Court notes RVR's brief comments on recission stating "it has not had sufficient time
    to evaluate this issue and reach an informed conclusion about its efficacy and fairness."
    (RVR Memo at 4).

retired over the last decade because they were paid under the original valuation methodology.

The Court agrees with Plaintiff that recission is not an appropriate remedy. Defendants have not established how recission would be an equitable remedy here, nor have they cited any case like this one in which recission was ordered.

**IT IS ORDERED** this Order resolves all issued raised by the parties in their joint statement to the Court before proceeding on damages.

**IT IS FURTHER ORDERED** the parties shall confer within 14 days of entry of this order and submit a scheduling order for the second phase of this case.

Dated this 9th day of June, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge