**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Lori Chavez-DeRemer, Secretary of Labor,

    Plaintiff,

v.

Eric Bensen, et al.,

    Defendants.

No. CV-19-03178-PHX-ROS

**ORDER**

Before the Court is a Motion to Amend Protective Order filed by Defendants Eric Bensen, Randall Smalley, Robert Smalley, the Smalley Marital Trust, the Smalley Survivor's Trust, and the Smalley Family Trust ("Individual Defendants"). (Doc. 563.) Plaintiff Lori Chavez-DeRemer, Secretary of Labor, filed a Response (Doc. 567), and Individual Defendants filed a Reply (Doc. 569).

For the reasons that follow, the Court will deny the Motion to Amend Protective Order.

## I.    BACKGROUND

This is an ERISA action brought by the Department of Labor ("DOL") against Individual Defendants for breaches of fiduciary duty involving a prohibited transaction with Defendant Reliance Trust Company.

On April 30, 2020, the parties filed a Joint Motion for Entry of Stipulated Protective Order. (Doc. 43.) The Court granted their Joint Motion on May 4, 2020, and issued the Stipulated Protective Order. (Doc. 44.) In relevant part, the Stipulated Protective Order

defines "Confidential Information" to include:

> information contained or disclosed in any materials, including documents, portions of documents, answers to interrogatories, responses to requests for admissions, trial testimony, deposition testimony, and transcripts of trial testimony and depositions, including data, summaries, and compilations derived therefrom that is deemed to be Confidential Information by any party to which it belongs.

(*Id.* at 2.) Paragraph 18 of the Stipulated Protective Order provides that "[t]he Court may modify the terms and conditions of this Order for good cause, or in the interest of justice, or on its own order at any time in these proceedings." (*Id.* at 8.)

Pursuant to the parties' Joint Proposed Case Management Plan, (Doc. 42), on May 13, 2020, the Court bifurcated the trial "into separate liability and remedies phases, with corresponding bifurcated discovery." (Doc. 49 at 5.) The Court noted that, should the Secretary prevail in the liability phase, "there will be a discovery period following the [C]ourt's merit-based order during which the Secretary may conduct discovery related to Defendants' assets, including tracing funds in Defendants' accounts for [her] claims to equitable relief under ERISA § 502(a)(5)." (*Id.* at 5–6.)

A bench trial was held over sixteen days between January 16 and February 15, 2024. On August 15, 2024, the Court issued its Findings of Fact and Conclusions of Law, concluding that "Defendants breached their fiduciary duties and allowed Reliance to engage in a prohibited transaction," and "the remaining issues involve available remedies." (Doc. 492 at 44–45.)

The parties filed a Joint Statement of Discovery Dispute on February 9, 2026, after the DOL served discovery on Individual Defendants seeking sensitive personal financial materials like banking and brokerage statements. (Doc. 561 at 2.) Individual Defendants argue the current Stipulated Protective Order does not sufficiently protect the requested materials from possible disclosure and propose an amendment to the Protective Order adding a "Highly Confidential" designation and restricting the dissemination of "Highly Confidential" material to only two DOL representatives apart from counsel and essential litigation personnel like expert witnesses. (*Id.*) The DOL opposes amending the Protective Order, noting that the current protections are "more than adequate" and "counsel do not

plan to routinely disseminate Defendants' materials beyond counsel themselves, [but] information contained in the materials likely will be cited in briefing that DOL client offices may wish to review." (*Id.* at 2–3.)

## II.    LEGAL STANDARD

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, a district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . designating the persons who may be present while the discovery is conducted." Fed. R. Civ. P. 26(c)(1)(E).

The party seeking to modify a protective order must demonstrate good cause for the modification. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir. 1992). To establish good cause, the moving party "bears the burden of showing specific prejudice or harm will result if no [modification] is granted." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also Beckman*, 966 F.2d at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986))).

"If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips*, 307 F.3d at 1211. "When private financial information is at issue, the Court is required to balance the party's interest in maintaining the confidentiality of its financial information against the interests of ascertaining the truth, addressing potentially severe wrongdoing by defendants, and ensuring the enforcement of rights." *Mardiros v. City of Hope*, No. 219CV02196RMAAX, 2019 WL 13164174, at *2 (C.D. Cal. Oct. 2, 2019) (citing *Charles O. Bradley Tr. v. Zenith Cap. LLC*, No. C-04-2239 JSW (EMC), 2005 WL 1030218, at *2 (N.D. Cal. May 3, 2005)). This balancing test[1] requires a court to

---

[1] The DOL quotes *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007), for the proposition that this balancing test also "requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure." Notably, this quote is not taken from *Nutratech*, although similar language appears therein. *See id.* ("Where trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective

"identify and discuss the factors it considered in its 'good cause' examination to allow appellate review of the exercise of its discretion." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (quoting *Phillips*, 307 F.3d at 1212). Additionally, the Ninth Circuit has "directed courts doing this balancing to consider the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995)." *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (citing *Phillips*, 307 F.3d at 1211). Those factors are:

> (1) whether disclosure will violate any privacy interests;
> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> (3) whether disclosure of the information will cause a party embarrassment;
> (4) whether confidentiality is being sought over information important to public health and safety;
> (5) whether the sharing of information among litigants will promote fairness and efficiency;
> (6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> (7) whether the case involves issues important to the public.

*Id.* at 424 n.5 (quoting *Glenmede Trust*, 56 F.3d at 483). "But even when the factors in this two-part test weigh in favor of protecting the discovery material (i.e., where the court determines that disclosure of information may result in "particularized harm," and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *Id.* at 425 (citing *Foltz*, 331 F.3d at 1136–37).

## III.   ANALYSIS

The Court begins by noting the unique nature of Individual Defendants' requested modification. By agreeing to the Stipulated Protective Order, the parties "implicitly acknowledged" that there is good cause to protect Individual Defendants' sensitive financial information from public disclosure. *See Factory Mut. Ins. Co. v. Insteel Indus., Inc.*, 212 F.R.D. 301, 304 (M.D.N.C. 2002) (quoting *Bayer AG & Miles, Inc. v. Barr Labs.,*

---

order will impair prosecution or defense of the claims."). Moreover, as evidenced by the full quote from *Nutratech* and similar cases that cite *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992), this standard is specifically for protective orders shielding confidential commercial information like trade secrets from a party's competitors.

*Inc.*, 162 F.R.D. 456, 463–64 (S.D.N.Y. 1995)). In most cases involving modification of an existing protective order, the requested modification is to either permit disclosure of previously protected information or to protect information not previously shielded from disclosure. *See, e.g.*, *Campos v. Ariz. Bd. of Regents*, No. CV-24-00987-PHX-JJT, 2024 WL 5187690 (Dec. 20, 2024). But here, the requested modification would not change the protected status of the information; rather, Individual Defendants seek to impose further limits on the DOL's use and dissemination of the information. As such, the factors from *Glenmede Trust* and other cases that focus on balancing the public's interest in accessing information do not neatly apply to Individual Defendants' request. Because the proposed modification would not affect the existing limitations on public disclosure, good cause for the modification requires Individual Defendants to show particularized harm will result specifically from a failure to grant their requested modification. In other words, it is undisputed that public disclosure of the sensitive financial information may harm Individual Defendants, so they are required to show specific harm will result if the information is not limited to only two DOL representatives.

Individual Defendants argue that "the DOL's potential dissemination of Individual Defendants' Highly Confidential and private material with an unknown number of unidentified people (who then might share this information further, even inadvertently)" could result in significant harm. (Doc. 563 at 9.) The Court agrees that, as a general proposition, "the more people that come into contact with Individual Defendants' Highly Confidential personal information (e.g. their current bank and brokerage statements), the greater the likelihood that this information could be disclosed outside the parameters of this litigation." (*Id.* at 8.) But in the absence of "specific examples or articulated reasoning" regarding the dangers of the DOL's potential dissemination of confidential information among DOL personnel, who are already bound by the existing Stipulated Protective Order, Individual Defendants' speculation and "[b]road allegations of harm" are not sufficient to establish good cause. *See Beckman*, 966 F.2d at 476.

Although Individual Defendants cite numerous cases where courts have found good

cause to issue protective orders limiting information to attorneys' eyes only ("AEO"), most cases with AEO designations involve confidential business information like trade secrets being protected from a direct competitor of the producing party.[2] *See, e.g.*, *United States v. Manpow, L.L.C.*, No.: 2:21-05418 VAP (ADSx), 2023 WL 4291806 (C.D. Cal. May 31, 2023); *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604 (W.D. Wash. 2013); *Defazio v. Hollister, Inc.*, No. CIV S-04-1358 DFL GGH, 2007 WL 2580633 (E.D. Cal. Sept. 5, 2007) (finding "one of the plaintiffs [] has an employment relationship with one of [the defendant]'s competitors," so "the mere existence of a protective order may not be enough to overcome the temptation to leak some of the information"); *see also In re The City of New York*, 607 F.3d 923, 935 (2d Cir. 2010) ("The disclosure of confidential information on an "attorneys' eyes only" basis is a routine feature of civil litigation involving trade secrets."). Other cited cases involved protective orders where the parties stipulated to AEO designations. *See, e.g.*, *Flemming v. Parnell*, No. C13–5062–BHS, 2013 WL 3270401 (W.D. Wash. June 26, 2013); *M.G. v. Metro. Interpreters & Translators, Inc.*, No. 12cv0460–JM (MDD), 2014 WL 5494910 (S.D. Cal. Oct. 30, 2014); *J.R. Simplot Co. v. McCain Foods USA, Inc.*, No. 1:16-cv-00449-DCN, 2019 WL 2745730 (D. Idaho July 1, 2019); *see also Thomas v. Cassia Cnty.*, No. 4:17-cv-00256-DCN, 2018 WL 2224052 (D. Idaho May 15, 2018) (giving the parties leave to stipulate to a protective order "such as an attorneys' eyes only order"). But a court's granting of a stipulated protective order with AEO designations does not establish that the court found good cause for this heightened level of confidentiality. *See In re Roman Cath. Archbishop*, 661 F.3d at 424 ("While courts generally make a finding of good cause before issuing a protective order, a court need not

---

[2] Individual Defendants also point to five sample protective orders from judges in the District of Arizona that include a provision for AEO designations. (*See* Doc. 569 at 4.) Although the sample provisions do suggest information concerning "finances" may be a proper subject for AEO designation, in context, these provisions clearly focus on protecting confidential business information from competitors:

> Any party may designate information as "HIGHLY CONFIDENTIAL – FOR COUNSEL ONLY" only if, in the good faith belief of such party and its Counsel, the information is among that considered to be most sensitive by the party**, including but not limited to trade secret or other confidential data related to research, development, finances, or customers**.

(*E.g.*, *id.* at 17) (emphasis added).

do so where (as here) the parties stipulate to such an order.")

Moreover, the risk of harm asserted by Individual Defendants can be sufficiently mitigated by the existing protection under the Stipulated Protective Order, which includes limits on the DOL's use and dissemination of Individual Defendants' sensitive information. Individual Defendants repeatedly point to the DOL's position in the Joint Statement of Discovery Dispute that "[w]hile counsel do not plan to routinely disseminate Defendants' materials beyond counsel themselves, information contained in the materials likely will be cited in briefing that DOL client offices may wish to review." (Doc. 561 at 2–3.) Although, from this statement, it is unclear for what purposes DOL client offices "may wish to review" Individual Defendants' sensitive financial information, pursuant to paragraph 5 of the Stipulated Protective Order, the DOL is restricted to using confidential information "only for purposes of this action." (Doc. 44 at 7.) And there is no evidence to suggest the DOL intends to violate the Stipulated Protective Order and subject itself to possible sanctions by sharing confidential information for purposes unrelated to prosecuting this case or otherwise act in bad faith. *Cf. Chavez-DeRemer v. Coway USA, Inc.*, No. 2:24-cv-08156-JLS-AJR, 2025 WL 3704376, at *4 (C.D. Cal. Dec. 22, 2025) (finding good cause to issue a protective order "in light of [the DOL]'s repeated assertion of its obligation to share discovery materials with other federal agencies for general law enforcement purposes both during informal discovery conferences and in the briefing").

Based on the foregoing, Individual Defendants have failed to carry their burden of demonstrating particularized harm that will result if their proposed modification is not granted. The Court does not find good cause to modify the Stipulated Protective Order.

Accordingly,

**IT IS ORDERED** the Motion to Amend Protective Order (Doc. 563) is **DENIED**.

Dated this 10th day of April, 2026.

_____
Honorable Roslyn O. Silver
Senior United States District Judge

- 7 -